COMMONWEALTH TITLE INSURANCE & TRUST COMPANY
v. ENGERBRET K. DAKKO.[1]

May 29, 1903.

Nos. 13,465—(81).

Ejectment—Usurious Mortgage.

The defense to this action of ejectment was that the mortgage through which the plaintiff claims title to the land in question was usurious. *Held*, that the trial court erred:

[1] Reported in 94 N. W. 1088.

**Submitting Question to Jury.**

    1. In submitting to the jury the question whether the defendant signed a certain contract, purporting to constitute a third party his agent for the purpose of negotiating a loan for him, for the reason that the evidence is practically conclusive that he did sign the contract.

**Instruction to Jury—Principal and Agent.**

    2. In refusing to instruct the jury to the effect that if an agent makes an usurious exaction, solely for his own benefit, without the knowledge, authority, or sanction of the principal, and without reason on his part to anticipate such conduct on the part of the agent, he is not affected by such illegal action, if he has not in any manner received any benefit therefrom or ratified it.

Action of ejectment in the district court for Norman county and to recover $300 for the use and occupation of the premises. The case was tried before Watts, J., and a jury, which rendered a verdict in favor of defendant. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed, and new trial granted.

*Chas. J. Bartleson*, for appellant.

*O. Mosness*, for respondent.

START, C. J.

On April 16, 1889, the defendant executed his promissory note to the Northwestern Guaranty Loan Company, hereafter designated as the company, and thereby promised to pay to its order $800 five years from the date thereof, with interest, payable semi-annually, at the rate of six per cent. per annum. He secured the payment of this note by a mortgage to the company on the land described in the complaint herein, which was duly recorded. The company duly assigned the note and mortgage to the plaintiff. Default was made in the payment thereof, and on October 16, 1894, the mortgage was duly foreclosed, and the mortgaged premises duly sold to the plaintiff at the foreclosure sale. No redemption was ever made from the sale, and this is an action of ejectment to recover from the defendant possession of the land. The defense to the action was that the note and mortgage were, in their inception, usurious. This was the only question litigated on the trial of the action, which resulted in a verdict for the de-

fendant; and the plaintiff appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

The evidence is conclusive that the defendant was to pay interest at the rate of ten per cent. per annum upon the loan, and that it was in the form of a note for $800, due five years from date, with interest, payable semiannually, at the rate of six per cent. per annum, and was to be discounted by the company, the payee in the note, so as to make the interest rate ten per cent. per annum, payable semiannually. The evidence is also practically conclusive that the loan was made through N. Kjeldson, at Ada, in this state; that the company discounted the note and mortgage in question, and sent to him its check for $676.48, payable to the order of the defendant, on account of the loan; and that the check was paid and returned to the company.

On the trial one of the principal questions litigated was whether Kjeldson was the agent of the defendant or of the company. The defendant testified, in effect, that he received for his $800 note only $552, and that Kjeldson retained about $125 over ten per cent. interest; that he never dealt with any other person except Kjeldson with reference to the loan. He testified on his cross-examination that he went to Kjeldson for the purpose of getting the loan because he did not know any one else to get it from. He was shown a contract which is referred to in the record as Exhibit E, as to which he testified as follows:

"Q. Is that your signature to that instrument? A. It looks like it, but I don't know that I have written it. Q. We have your signature attached to this mortgage. Look at the two, and see if they are not the same? A. This is no check. Q. I was asking you about the signature. Is that your signature to that document? A. Yes, sir."

Upon his redirect examination by his own counsel he further testified thus:

"Q. Did you sign that paper, Exhibit E? A. Yes, sir. Q. How do you know? A. It looks like my writing, but I don't remember of signing it. Q. I want to know if you swear that you signed this paper, marked 'Exhibit E'? A. I can't swear to it—whether

I signed it or not—but I didn't know that I signed such a paper. Q. Do you know that you signed that instrument, Exhibit E? A. No; I don't know. I cannot remember that I signed such a paper. Q. Did you ever sign any paper by which you intended to make Kjeldson your agent. (Objected to as incompetent; calling for a conclusion of the witness as to a fact which is shown by the paper itself. Objection sustained.) Q. Did Kjeldson, in making that loan, act for you as your agent in any manner? (Objected to as incompetent and immaterial. Objection overruled.) A. No. * * * Q. Did you ever sign any paper at the time of obtaining this loan, or thereabouts, which was understood by you to be a paper authorizing Kjeldson to be your agent in making this loan? (Objected to as incompetent and immaterial, and not the best evidence at this stage. Objection overruled.) A. No, sir. Q. Have you ever seen that paper before? A. Not that I can remember."

On his recross-examination he testified:

"Q. You could not have signed that paper without seeing it, could you? A. No, that may be; but he didn't tell me what paper it was. Q. You have no doubt that is your signature attached to it, have you? A. It resembles it somewhat, but I am not certain about it. Q. What is your nationality? A. Norwegian. Q. Kjeldson was Norwegian, also, was he not? A. Yes, sir. Q. And all your conversations with him were in your native tongue, wasn't it? A. Yes, sir."

The note and mortgage admittedly signed by the defendant were received in evidence, and were produced in this court, and received and considered by the court in connection with the transcript of the proceedings, pursuant to rule 6 of this court. Exhibit E is a contract, in the English language, constituting Kjeldson the agent of the defendant for the purpose of securing for him the loan from the company. It was received in evidence. The plaintiff at the close of the evidence moved the court to direct a verdict in favor of the plaintiff. Thereupon the court ruled as follows:

"The only question for the jury to pass upon, that there can be, is whether or not Mr. Kjeldson was the agent of this loan company. I will submit the question to the jury as to whether or not the defendant signed this paper marked 'Exhibit E.' The motion is denied."

And the question was so submitted.

The first assignment of error to be considered is that the court erred in submitting to the jury the question whether or not the defendant signed the agency contract, Exhibit E. We hold that it was error to submit the question to the jury, for the evidence is practically conclusive that he did sign it, and any verdict for the defendant based upon a finding that he did not sign it could not be sustained. We have set forth substantially all of the defendant's testimony relevant to this issue as it appears in the record. It is impossible to read it without concluding that the defendant, when left to himself, truthfully testified that the signature to the contract was his, and that he signed the contract, and that it was only when unduly pressed by his own counsel that he equivocated. Again, a comparison of the signature to the contract with the defendant's admitted signature to the note and mortgage, taken in connection with his testimony, renders it morally certain that he signed the contract. It is, however, claimed by defendant's counsel that, even if he did sign the contract, there is evidence sufficient to justify the jury in finding that the contract was a mere cover to enable the company to evade the usury laws of the state. It is true that there is no device or shift on the part of the lender to evade the statute behind which the law will not look in order to ascertain the real character of the transaction. The fact that the defendant signed the agency contract did not necessarily preclude him from showing that Kjeldson was the agent of the company, and not his. Lukens v. Hazlett, 37 Minn. 441, 35 N. W. 265; Larson v. Lombard Inv. Co., 51 Minn. 141, 53 N. W. 179. But the case was not submitted to the jury on any such basis, and it is impossible to say that the verdict was not based upon a finding by the jury that the defendant did not sign Exhibit E.

It is further claimed on behalf of the defendant that, if it be conceded that Kjeldson was the defendant's agent, still the transaction was usurious, upon the admitted facts of the case, as a matter of law; hence all alleged errors occurring on the trial were harmless. This conclusion is based upon the admission that the company took from the defendant a note for $800, due in five years, with interest at six per cent. per annum, but actually

loaned to him only $676.48  The trial court instructed the jury that, if the defendant received $676.48 from the company on the loan, it was not usurious. .No exceptions were taken by either party in the district court to this instruction, and the claim seems to be a newly discovered one.  However this may be, if it is correct it is a conclusive reason why the order appealed from should be affirmed, for, if such be the case, the verdict and order are right, independently of all other considerations.  We have attentively considered the claim, and reviewed the computations made by counsel in its support, and have reached the conclusion that the taking of a note and mortgage of $800, due in five years, with interest at six per cent. per annum, payable semiannually, for a loan of $676.48, due in five years, with interest at ten per cent. per annum, payable semiannually is not, as a matter of law, usurious.  Swanson v. Realization & D. Co., 70 Minn. 380, 73 N. W. 165.

The plaintiff requested the court to instruct the jury as follows:

"The jury are instructed that if they believe from the evidence that the agents of the Northwestern Guaranty Loan Company, in making the loan in controversy, made usurious exactions from the defendant solely for their own benefit, without the knowledge or assent or sanction of said company or its officers, and without reason on its or their part to anticipate such conduct on the part of its agent or agents, and that it received no benefits therefrom, nor in any manner ratified such acts of the agents, it, and the plaintiff as its assignee, are not affected by such illegal exactions of the agent or agents."

This was refused, and the ruling assigned as error.  The request is a correct statement of the law, and should have been given.  Acheson v. Chase, 28 Minn. 211, 9 N. W. 734; Avery v. Creigh, 35 Minn. 456, 29 N. W. 154; Stein v. Swensen, 44 Minn. 218, 46 N. W. 360.

It follows that it was reversible error for the court to submit to the jury the question whether the defendant signed Exhibit E, and also to refuse to give the requested instruction, for which there must be a new trial.

The plaintiff, in this connection, urges that it is entitled to judgment absolute in its favor, because it was entitled to a directed

verdict; there being no issue for the jury as to whether the defendant signed the agency contract. As already suggested, it does not conclusively follow from the mere fact that the defendant signed the contract that Kjeldson was his agent in making the loan. The question of such agency must be determined from all the acts of the parties, and the circumstances under which the contract was signed and the loan made. We refrain from analyzing the evidence, in view of the fact that there is to be a new trial; but we are satisfied, upon the consideration of the whole record, that this is not a case where the plaintiff is entitled to a judgment notwithstanding the verdict. With reference to another trial, it is proper to say that it was error for the court to permit the defendant to testify, in effect, that, in making the loan, Kjeldson did not act as his agent in any manner, and that he never signed any paper which he understood to be one authorizing Kjeldson to act as such agent. The first was a conclusion of the witness. He should have stated all that was said and done with reference to the loan, leaving the jury to draw the conclusion. The last was not relevent to the question whether the defendant signed Exhibit E—the matter as to which he was being examined.

We are not, however, to be understood as holding that, where the issue is whether a party understood the contents or legal effect of a written instrument, he may not testify directly as to his understanding, for he may do so. Berkey v. Judd, 22 Minn. 287; Ganser v. Fireman's Fund Ins. Co., 38 Minn. 74, 35 N. W. 584.

Order reversed and a new trial granted.