DOROTHY MORROW v. FRED K. PORTER AND OTHERS.[1]

January 9, 1925.

No. 24,282.

**Specific performance of father's promise granted.**

    1. The evidence sustains a finding that plaintiff's deceased father bought and orally promised to give or devise her a residence property if she would care for and support him until his death; and that she cared for and supported him and rendered services of a personal and domestic character, not practically compensated in damages, and was entitled to specific performance upon his failure to effectuate his promise.

[1]Reported in 202 N. W. 53.

· **Admission of evidence of hearing conversations with decedent erroneous.**
2. Under the statute the plaintiff could not testify as to conversations with or admissions of her deceased father. The statute cannot be evaded by indirection. It was error to permit her to testify that she heard the conversations between her husband and the deceased to which he had testified. In doing so she in effect testified that such conversations were had.

Action in the district court for Martin county to enforce specific performance of an agreement. The case was tried before Dean, J., and a jury which found that the alleged agreement was made by plaintiff's father and that she cared for him in fulfilment of it. The court adopted the findings and ordered judgment for plaintiff. From an order denying their motion for judgment notwithstanding the special verdict or for a new trial, defendants appealed. Affirmed.

*Allen & Allen*, for appellants.

*Haycraft & McCune*, for respondent.

DIBELL, J.

Action by plaintiff, a daughter of Henry V. Klock, deceased, against Fred K. Porter, his administrator, and his heirs for the specific enforcement of an agreement to devise a residence property in Fairmont, in consideration of her furnishing him a home and care and support during his life. Whether such agreement was made, and performed by the plaintiff, was submitted to a jury. There were findings for the plaintiff and the defendants appeal from the order denying their motion for a new trial.

1. The deceased, Klock, was a widower 81 years of age at his death on December 9, 1922. The plaintiff and the defendants, other than the administrator, are his children. In the spring of 1920 Klock bought the residence property in controversy. The plaintiff and her husband occupied it, and cared for and supported him, with the interruptions now to be noted, until his death. For a period from May, 1921, to October, 1921, another daughter occupied the home and cared for her father. There was some disagreement or misunderstanding at the time. In October, 1921, the plaintiff moved back, and resumed the care of her father. From

May to October, 1922, she cooked for her husband in his camp on a ditch contract some miles from the city, and lived there. During this period she and her husband frequently drove to the city in their auto and attended to the decedent's needs. He was very deaf, had other infirmities, and was difficult to get along with. His care involved the performance of disagreeable services. The evidence justifies a finding that an agreement such as is claimed was made; that when the plaintiff returned in the fall of 1921 it was reaffirmed; and that the plaintiff assumed a personal and domestic relation towards the decedent and rendered services so difficult of compensation in money as to warrant a specific performance. Colby v. Street, 146 Minn. 290, 178 N. W. 599, and cases cited; Odenbreit v. Utheim, 131 Minn. 56, 154 N. W. 741, L. R. A. 1916D, 421; Robertson v. Corcoran, 125 Minn. 118, 145 N. W. 812; Brasch v. Reeves, 124 Minn. 114, 144 N. W. 744; Haubrich v. Haubrich, 118 Minn. 394, 136 N. W. 1025. We do not fail to note that the period during which the plaintiff cared for her father was not long, measured in years, and that there were the interruptions mentioned. Nevertheless, the evidence sustains the finding.

2. The plaintiff's husband testified to two conversations with Klock in proof of the agreement and its reaffirmance. His testimony was important. Both were in the presence of the plaintiff. She could not give evidence "of or concerning any conversation with, or admission of," her deceased father. G. S. 1923, § 9817; G. S. 1913, § 8378. The first conversation was in the fall of 1919 before the residence was bought. The plaintiff testified as follows:

Q. "You heard your husband's testimony about the conversation with your father when you lived in the Garlich house in the fall of 1919?

A. "Yes, sir.

Q. "About buying a place for you?

A. "Yes, sir.

Mr. Allen: "We object to the question as calling for the testimony of this witness with a deceased person. She is a party to this action and no right to testify to that conversation indirectly any more than she has directly.

The Court: "The record may stand.

Q. "Did you hear that conversation?

A. "I did."

Same objection. Same ruling.

The second was in the fall of 1921, when plaintiff and her husband were living in the Swanson house, shortly before the plaintiff's sister, who lived with her father from May to October, moved away and the plaintiff moved back. It is claimed that the original agreement was reaffirmed at this time. The plaintiff testified:

Q. "Did your father visit you while you lived at the Swanson house?

A. "Yes, sir, many times.

Q. "You heard your husband's testimony here this morning as to the conversations he had with your father?

A. "Yes, sir.

Q. "When he made these visits?

A. "Yes, sir.

Q. "You heard those conversations, did you?

A. "Yes, sir."

Mr. Allen: Object to these questions as an attempt to prove a conversation with a deceased person indirectly by a party in interest, and we move that the answer of the defendant be stricken out on that ground.

The Court: "The motion is denied. He has not called for any conversation."

The effect of the statute, whatever is thought of its policy, cannot be avoided by indirection. It was competent to show that the plaintiff was present when her father made the promises or agreements claimed. If the jury found the promise it might conclude that her subsequent acts were referable to it in that she accepted and performed. With the statute as it is she could not help prove the agreement. But that is what she did. She testified that she heard the conversations to which her husband testified. A trier of fact would consider her husband's testimony, and her own as well, in proof of the promise, and indeed both were. Her husband detailed

what was said. She said that she heard said what he testified was said. The case on this point is nearly ruled by Redding v. Godwin, 44 Minn. 355, 46 N. W. 563. It is not controlled by State Bank v. Strandberg, 148 Minn. 108, 180 N. W. 1006. There was error in admitting the plaintiff's testimony.

Order reversed.