## *In re* EINFELDT'S ESTATE.

### CLAIM OF PAUL.

1. WITNESSES — OPPOSITE PARTIES — MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—THIRD PARTIES.

   Statute barring testimony of opposite parties upon matters which must have been equally within the knowledge of a deceased person does not exclude the testimony of third parties as to matters equally within the knowledge of the deceased and admission of testimony of a disinterested third party as to such matters does not permit admission of the testimony of a litigant whose interests are adverse to the estate of the deceased person (3 Comp. Laws 1929, § 14219).

2. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED— ADMISSION OF TESTIMONY OF PARTY WITH PECUNIARY INTEREST— WAIVER OF BAR AS TO OPPOSITE PARTIES.

   Admission of testimony as to matters equally within knowledge of deceased by witnesses having a pecuniary interest in the estate of the deceased person waives the protection of the statute otherwise barring the testimony of an opposite party as to such matters and enables such opposite party to testify (3 Comp. Laws 1929, § 14219).

3. Same—Presence of Claimant During Conversation Between Deceased and Third Party—Rebuttal.

In proceeding by claimant to recover for services alleged to have been rendered deceased, admission of rebuttal testimony of claimant that she was not present at conversations between deceased and a preceding witness in which it was claimed statements had been made by deceased in derogation of plaintiff's claim held, prejudicial and reversible error, matter of presence of claimant when such conversations took place being a matter equally within knowledge of deceased and barred under statute relative to testimony on such matters by an opposite party since the ultimate effect of denial of presence was to deny deceased ever made statements testified to (3 Comp. Laws 1929, § 14219).*

4. Trial—Instructions—Requests to Charge—Evidence.

Failure of trial judge to instruct jury that it was not to consider statements made by the deceased while in a delirious condition was not reversible error because appellant had made no request for such instruction although otherwise it would have been permissible in view of testimony given by the attending physician and nurse (Court Rule No. 37, § 9 [1933]).

5. Executors and Administrators—Claims Against Estates—Directed Verdict—Evidence.

In proceeding to recover against estate of a deceased person for balance due for services rendered, denial of motion of defendant for directed verdict at close of claimant's proofs held, correct.

6. Same—Claims Against Estates—Great Weight of Evidence.

Under record presented on appeal of estate in proceeding against it to recover balance of wages for services rendered deceased by claimant, verdict held, not against the great weight of the evidence.

Appeal from Wayne; Chenot (James E.), J. Submitted October 4, 1938. (Docket No. 7, Calendar No. 40,025.) Decided November 10, 1938. Rehearing granted February 1, 1939. Discontinued March 24, 1939.

In the matter of the estate of Emma Einfeldt, deceased. Emma Paul filed her claim for services.

* See *Continental Assurance Co.* v. *Friedman*, 289 Mich. 531, overruling *In re Einfeldt's Estate.*—Reporter.

Claim allowed.  The estate appealed to circuit court.
Verdict and judgment for claimant.  Estate appeals.
Reversed and new trial granted.

*Kelly, Kelly & Kelly,* for plaintiff.

*Leo A. Coskey (Rathbun & Arvidson,* of counsel),
for defendant.

NORTH, J.    Emma Paul filed a claim in the pro-
bate court of Wayne county against the estate of
Mrs. Emma Einfeldt, deceased, for services ren-
dered Mrs. Einfeldt under an alleged contract of
employment.  The claim was allowed by the com-
missioners and an appeal was taken to the circuit
court.  On trial by jury in the circuit the claim in
the amount of $2,328 was again allowed.  The estate
has appealed.

Claimant began working for Mrs. Einfeldt in 1921
and continued in her employ until her death, March
22, 1936.  Until about July 27, 1929, deceased lived
in an apartment on West Grand Boulevard, De-
troit, which she then sold.  Thereafter she lived in
various apartments.  Until Mrs. Einfeldt moved in
1929, Miss Paul had received the full amount of her
wages at the rate of $8 per week.  Her present claim
is for wages alleged to have been earned between
1929 and Mrs. Einfeldt's death in 1936, at a wage
of $8 per week, less $5 per month admittedly paid.

A witness for claimant testified that in 1929 she
talked with Mrs. Einfeldt who stated:

"You know I am not giving Emma her $8 a week
like she should have, because my money is running
low.  Now you see Emma will get it.  I am giving
her $5 a month towards her $8."

And this same witness testified that shortly before
Mrs. Einfeldt's death in 1936 she again talked with
the witness as follows:

"She told me about giving Emma $5 per month, toward her $8. She said, 'You know, Emma will get every cent that is coming to her.' She said, 'I am not giving it to her now because my money is running low, but,' she said, 'if Emma does not get it now while I am living, she will get it from my estate, because there will be plenty there to take care of her.'"

Another witness testified that he learned from conversations with Mrs. Einfeldt that she was paying Miss Paul $5 a month towards her wages which were $8 per week.

There was other testimony somewhat similar in character. The doctor attending Mrs. Einfeldt testified that sometimes her mental condition would be clear and sometimes not during the last weeks of her life. The nurse who attended Mrs. Einfeldt during her last illness stated that her mind was clear from February 16 to February 26, 1936, which was during the time that the deceased is claimed to have stated that Miss Paul had not been paid in full for her services since 1929.

Testimony of a contrary purport was given in behalf of the estate. One of its witnesses testified:

"I had a conversation there in the presence of Emma Paul and with Emma Einfeldt as to wages. She said that the little money that she had left * * * she had to be mighty careful of; she said it was dribbling away. She said, 'You know, Mary —she always called me Mary—she said, 'You know I paid her $8,' she says, 'and I also paid her $8,' she says, 'when we lived up on McQuade and Boston, and then, of course,' she says, 'I had to reduce it there to $5, and then when I moved up on Monica and Davison I gave her $4 a week, but,' she says, 'I am living here now and I am giving Emma Paul $5 per month,' she says, 'Emma is satisfied.' And

Emma says, 'Aha, Ja, Miss Einfeldt.' That is the words she said. I was there.''

This same witness also testified that after the death of Mrs. Einfeldt claimant called the witness on the phone and in response to an inquiry from the witness claimant said Mrs. Einfeldt did not owe her anything.

The executor of the estate, John Wilder, testified that at the time Mrs. Einfeldt sold the house on West Grand Boulevard he had a conversation with her in the presence of claimant in which the deceased said to claimant:

"Now, Emma, you have been wanting to get married.   *   *   *   I am going to get a small apartment and move in it, and I won't need you. If you don't get married, I will try and get you a job.''

Mr. Wilder gave the following testimony concerning a conversation at his cottage in August, 1930:

"I had a conversation regarding Emma Paul's wages at that time with Emma Paul present. The three—Mrs. Starkey, Miss Paul and Mrs. Einfeldt —were doing dishes and Mrs. Einfeldt said, 'I pay $8 a week for a cook and I am never home to eat.'   *   *   *   Nothing more was said at that time about wages either by Mrs. Einfeldt or Miss Paul; the conversation went on. That was the only thing that called my attention to it, the fact that when she left us to go back, she said she would go back for whatever she wanted to pay her, but she was still paying her $8 a week before she came to our place.''

This same witness testified that he had another conversation in 1933 with Mrs. Einfeldt at which claimant was present and Mrs. Einfeldt said:

"John, money is quite a problem with me these days; you know I am only paying Emma $4 a week."

He also testified that shortly before or after the death of Mrs. Einfeldt he had the following conversation with claimant:

"Well, I said, 'Emma, haven't you always been paid what you were promised?' She said, 'Yes, but I should have some money; if I am not satisfied, I will do something about it.' "

There was other somewhat similar testimony tending to defeat Miss Paul's claim.

In rebuttal to the testimony given in behalf of the estate as to conversations had with decedent in the presence of claimant, the latter was permitted to testify over objection that she was not present during any one of the several conversations. Appellant contends that the trial court committed error in permitting claimant so to testify, it being asserted by appellant that this was a matter equally within the knowledge of the deceased and claimant's testimony was barred by the following statutory provision:

"When a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all to matters which, if true [,] must have been equally within the knowledge of such deceased person." 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914).

The quoted statutory provision does not exclude the testimony of third parties as to matters equally within the knowledge of the deceased. *Shippee* v. *Shippee's Estate*, 255 Mich. 35. But admission of

the testimony of disinterested third parties as to matters equally within the knowledge of the deceased does not open the door for the admission of the testimony of a litigant whose interests are adverse to the estate. In the *Shippee Case,* just above cited, we said: "And counsel for plaintiff are in error in contending that her (claimant's) testimony was admissible if others were aware of and testified to such matters."

While testimony as to matters equally within the knowledge of the deceased by witnesses having a pecuniary interest in the estate waives the protection of the statute and enables the opposite party to testify (*Rock* v. *Gannon Grocery Co.,* 246 Mich. 545), in the instant case the witnesses whose testimony claimant sought to contradict had no financial interest in the estate or in the outcome of this litigation. Their testimony did not waive the statute. We might well find in the instant case as we have already said:

"The exception announced in *Rock* v. *Gannon Grocery Co.,* 246 Mich. 545, that an adverse party may testify in contradiction of a witness in interest, has no application. It is confined to instances where both the disqualified person and the witness in interest have personal knowledge of the same facts, and testimony of the adverse party is permitted in reply to testimony of those facts by the interested witness." *Morse* v. *Railroad Co.,* 251 Mich. 309.

We have repeatedly said that the testimony of an adverse party should not be held to be prohibited by the statute unless the evidence discloses that the matter sought to be proven by such adverse party was equally within the knowledge of deceased. *Webster* v. *Sibley,* 72 Mich. 630; *Noonan* v. *Volek,*

246 Mich. 377. But in the instant case it conclusively appears that the matter as to which claimant was permitted to testify over objection by appellant was a matter equally within the knowledge of deceased. The question was whether claimant was or was not present at certain conversations which appellant's witnesses testified they had with deceased in claimant's presence. .

In their brief for appellant, counsel say:

"We raise no question here as to the right of Miss Paul to deny conversations with witnesses as to matters which occurred after decedent's death or as to matters which were not equally within the knowledge of the deceased. The particular objection is directed to her denial of (her presence at) conversations between the decedent and other witnesses at the trial. It is axiomatic that one cannot do by indirection, what one is not permitted to do directly. The ultimate effect of her denial was not to contradict the particular witness, of course, but to deny that Mrs. Einfeldt said the things she was alleged to have said. It was strictly one witness against another, on the surface, but in reality it was Miss Paul against Mrs. Einfeldt."

The appellant cites and quotes the following from *Chadwick* v. *Chadwick's Estate*, 52 Mich. 545:

"She (widow of deceased) had also been permitted to testify to a conversation she claimed to have heard between her husband and the claimant the next day after the settlement, which was prejudicial to rights of complainant and was offered as such. On the rebuttal the claimant took the stand and proposed to contradict the witness, but was refused leave so to do by the court on the ground that he was prohibited by statute from testifying as to that matter. This ruling was correct. The

case comes within the statute and the former ruling of this court in *Downey* v. *Andrus,* 43 Mich. 65.''

The quoted case sustains appellant's contention that it was error to permit claimant to testify that she was not present at the noted conversations, this being a matter which was equally within the knowledge of deceased. To hold otherwise would enable a claimant to testify to matters equally within the knowledge of the deceased in every case wherein the defense took the testimony of one or more disinterested witnesses as to matters of which both the claimant and the decedent had knowledge. Such a holding would largely defeat the purpose of the statutory enactment. It is not the law. As bearing upon this phase of the instant case see *Morrow* v. *Porter,* 161 Minn. 396 (202 N. W. 53), and *Griswold* v. *Hart,* 205 N. Y. 384 (98 N. E. 918, 42 L. R. A. [N. S.] 320, Ann. Cas. 1913 E, 790).

The testimony given by claimant on rebuttal had a decided bearing upon the determination of the main controverted issue. Its erroneous admission was therefore prejudicial and necessitates reversal.

Appellant complains that the trial judge did not instruct the jurors they were not to consider statements made by the deceased while she was in a delirious condition. In view of the testimony given by the attending physician and the nurse, such an instruction would have been proper. However, appellant made no request for such an instruction and hence failure so to charge cannot be relied upon by appellant as reversible error. Court Rule No. 37, § 9 (1933); *Moss* v. *Shreve,* 278 Mich. 665.

Numerous other errors are assigned. Some of them were of a technical character and even if well founded were not prejudicial. For the most part,

if not wholly, the assigned errors which we have not discussed are such that they are not likely to recur on retrial and we think it unnecessary to pass upon them herein. However, we may note in passing that the trial judge was correct in denying appellant's motion for a directed verdict at the close of claimant's proofs; and that on this record it cannot be said the verdict was against the great weight of evidence.

Judgment is reversed. New trial granted. Costs of this court to appellant.

Wiest, C. J., and Bushnell, Sharpe, Potter, Chandler, and McAllister, JJ., concurred. Butzel, J., did not sit.