INDUSTRIAL LOAN AND THRIFT CORPORATION (ROBERT J. BURNS, ASSIGNEE) v. EDNA F. SWANSON AND OTHERS.[1]

March 14, 1947.

No. 34,310.

[1]Reported in 26 N. W. (2d) 625.

R. F. *Schroeder*, for appellant.
John H. *Horeish*, for respondents.

PETERSON, JUSTICE.

Appellant, Robert J. Burns, the assignee of a default judgment recovered in the municipal court of St. Paul by Industrial Loan and Thrift Corporation against defendants Ellen G. Swanson (her true name is Ellen W. Swanson) and Charles L. Swanson, appeals from an order opening the judgment and granting them leave to answer. No point has been raised as to appellant's right to appeal, and probably it could not be done successfully. See, Sykes v. Beck, 12 N. D. 242, 96 N. W. 844.

On July 23, 1945, appellant commenced an action to recover on the judgment, in which defendants answered setting up meritorious defenses to the original cause of action on which the judgment was predicated, but not available in the action on the judgment because of the doctrine of *res judicata*. On April 25, 1946, the defenses, except a general denial, were stricken on appellant's motion. Thereupon, on May 22, 1946, defendants made an application under

§ 544.32 in the action in which the judgment was recovered to have the judgment opened and for leave to answer. This was done for the obvious purpose of enabling them to assert the defenses which they attempted to assert in the action on the judgment, but could not for the reason already stated. The court by the order in question granted the relief applied for.

Three questions are presented on the appeal: (1) Whether proceedings in the municipal court of St. Paul for relief from a judgment taken against a party through his mistake, inadvertence, surprise, or excusable neglect should be had under the special act governing proceedings in that court (Sp. L. 1889, c. 351, § 21, subd. 7), under which such applications must be made within 60 days after notice of the judgment, or under the general statute (§ 544.32), under which the application for relief must be made within one year after notice of the judgment; (2) whether defendants applied for relief from the judgment "within one year after notice thereof" as required by the statute; and (3) whether such relief could be granted as against appellant as the assignee of the judgment. Under the well-settled rule that an appellate court will consider only specifically assigned claims of error and will not search the record for others, we shall confine our decision to the three questions mentioned.

On August 6, 1935, appellant's assignor, Industrial Loan and Thrift Corporation, recovered a judgment against Ellen G. Swanson and Charles F. Swanson upon a promissory note for $165, interest, and attorney's fees, alleged to have been given by them and defendant Edna F. Swanson for a loan of money to Edna payable within one year in 12 monthly installments. Service of the summons was had on Charles F. Swanson personally and on Ellen by leaving a copy thereof at the house of their usual abode with him as a person of suitable age and discretion then residing therein. No formal notice of the entry of the judgment was served upon or given to defendants. Edna died prior to the institution of the present action.

It appears without dispute that defendants Charles and Ellen applied for relief more than 60 days after actual notice of the judgment. Concededly, if the proceedings were governed by the special act re-

lating to the municipal court of St. Paul, they were too late. On the other hand, if the proceedings were governed by the general statute and were brought within the year after notice of the judgment, they were in time. The question on this phase of the case is whether by reason of the facts to be presently stated defendants acquired notice of the judgment more than one year before they applied for relief.

Ellen, it is claimed, derived notice of the judgment through the levy on August 8, 1935, of an execution on a Willys coupé automobile. There was no evidence that the automobile belonged to her. No notice of the levy was served on her. On the day after the levy the sheriff released it "at the written request of attorney for Pltf herein." There was no proof that she knew that the levy had been made. In her affidavit in support of the application for relief from the judgment, she states that she had no notice of the judgment until appellant commenced the action to recover upon it. She was in no way contradicted.

Charles, it is claimed, derived notice of the judgment by reason of the facts that he was personally served with the summons and that on January 11, 1945, the sheriff served on him in St. Paul the execution issued to the sheriff of Dakota county, inventory of a levy, and sheriff's notice of sale thereunder. The inventory was on the back of the execution. It recited that on November 6, 1944, by virtue of the execution the sheriff of Dakota county had levied upon the right, title, and interest of defendant Charles L. Swanson in and to the following described property:

"All of the right, title and interest in and to the trading rights, membership rights or membership certificate in the Traders Livestock Exchange Incorporated, South St. Paul, Minnesota."

In the notice of sheriff's sale there was reference by recital to the judgment and levy. Sale of the property was to be held on January 23, 1945. In both the inventory and notice of sale the description of the property was prominent and the one thing that would catch the eye, because of the fact that it was indented and set apart from the

rest of those instruments in the manner it is set apart above from the rest of the opinion. The evidence by affidavit showed that Charles believed that the note was for $150; that it had been paid by Edna during her lifetime; that he had no actual knowledge or notice of the judgment; that he had a son named C. Eddie Swanson, who was engaged in the livestock commission business under the name of C. L. Swanson Cattle Company; that the son was a member of the Speculators Exchange at South St. Paul in Dakota county; that he subsequently procured the release of the levy in question; that he (Charles) thought the papers served upon him "were in connection with trouble involving his son's membership in the livestock exchange"; and that the only "papers" he ever received were those which he believed referred to trouble involving his son's membership in the livestock exchange. There was no evidence to show whether Speculators Exchange, of which the son was a member, and the Traders Livestock Exchange were the same institution. Charles' version was in no way contradicted.

■ Proceedings in the municipal court of St. Paul for relief from judgments upon the grounds of mistake, inadvertence, surprise, or excusable neglect are governed by the general statute (§ 544.32) and not by the special act (Sp. L. 1889, c. 351, § 21, subd. 7), relating to proceedings in that court. Holmes v. Igo, 110 Minn. 133, 124 N. W. 974; Wentworth v. National Live Stock Ins. Co. 110 Minn. 107, 124 N. W. 977. That being true, we shall consider the case under the general statute.

■ Under § 544.32, the court in its discretion "at any time within one year after notice thereof" may relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect. The precise question here is whether defendants applied to the court for relief within one year after they had notice of the judgment. "Notice" means *actual notice* or knowledge. Flanery v. Kusha, 147 Minn. 156, 179 N. W. 902; Kipp v. Clinger, 97 Minn. 135, 106 N. W. 108; McMurran v. Bourne, 81 Minn. 515, 84 N. W. 338; Wieland v. Shillock, 23 Minn. 227; Victory Bldg. Corp. v. Crist, 267 App. Div. 941, 47 N. Y. S. (2d) 458; Bissell v. N. Y. Cent.

etc. R. Co. 67 Barb. (N. Y.) 385.[3] In Cacka v. Gaulke, 212 Minn. 404, 406, 3 N. W. (2d) 791, 792, we spoke of "notice" of a judgment as meaning having "learned" of it.

*Constructive notice* does not satisfy the statutory requirement of actual notice. Redfield v. Critchley, 277 N. Y. 336, 14 N. E. (2d) 377. They are essentially different. *Constructive notice* is not *actual notice,* but is rather a legal substitute for it. In Bailey v. Galpin, 40 Minn. 319, 324, 41 N. W. 1054, 1055, we said:

"The distinction between constructive and actual notice is also to be noticed. Constructive notice of the contents of a deed arises as an inference or presumption of law from the mere fact of record, and is in law equivalent to actual notice of what appears upon the face of the record to the party bound to search for it, whether he has seen or known of it or not; that is, constructive notice under the recording acts may bind the title, but does not bind the conscience; while actual notice binds the conscience of the party."

In 39 Am. Jur., Notice and Notices, § 7, the text reads:

"Constructive notice is the law's substitute for actual notice, intended to protect innocent persons who are about to engage in lawful transactions. It is a legal inference from established facts and, like other legal presumptions, does not admit of dispute. It is in its nature no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted. Constructive notice has sometimes been defined by statute as notice imputed to a person not having actual notice, and it has been said that an essential part of the presumption is that the person sought to be charged is in fact ignorant of the facts."

In Schoedel v. State Bank of Newburg, 245 Wis. 74, 76, 13 N. W. (2d) 534, 535, 152 A. L. R. 459, it was held that "constructive notice" is, in point of fact, neither notice nor knowledge, and that "The term

---

[3]Minnesota Thresher Mfg. Co. v. Holz, 10 N. D. 16, 84 N. W. 581; Chapman v. Multnomah County, 63 Or. 180, 126 P. 996; Schobacher v. Germantown Farmers' Mut. Ins. Co. 59 Wis. 86, 17 N. W. 969; 34 C. J., Judgments, § 487, p. 262, note 4; 49 C. J. S., Judgments, § 288.

'constructive' is the mere trademark of a fiction" resorted to for the promotion of sound policy under certain circumstances by treating legal rights and interests of parties as though they had actual notice or knowledge.

■ The question, then, is whether defendants had *actual notice* of the judgment more than one year prior to May 22, 1946, the date on which they sought relief from the judgment. There is diversity of opinion as to how *actual notice* may be given or acquired. In New York, the settled rule is that formal, express notice in writing must be served on the defendant to set running the one year in which to apply for relief from the judgment. Redfield v. Critchley and Bissell v. New York Cent. etc. R. Co. 67 Barb. (N. Y.) 385, *supra;* 1 Nichols-Cahill, Ann. N. Y. C. P. A. § 108, and Pocket Supp. In the Redfield case, the court said (277 N. Y. 342, 14 N. E. [2d] 380) :

"We see no reason why the notice imported by section 108 should not be taken to· be the usual notice of a judgment, that is to say, service of a copy thereof with written notice of entry, as the Appellate Division has held."

The New York rule conforms to the general rule that where notice is required or authorized by law in any judicial proceeding the notice must be in writing, although not in terms required to be in writing, and must be served personally on the person to be notified. 39 Am. Jur., Notice and Notices, §§ 9-10.

Quite contrary to the New York rule, this court in common with some others has construed the requirement of "notice" to be satisfied by *actual notice,* however acquired, and as not requiring service of a formal, written express notice of the judgment, notwithstanding the fact that our statute the same as the others mentioned was derived from that of New York, and that the general rule requiring formal, written express notice is that followed by the New York courts. Wieland v. Shillock, 23 Minn. 227; 34 C. J., Judgments, § 487, p. 262, note 4; 49 C. J. S., Judgments, § 288. Since the rule announced in our prior decisions involves a departure from well-settled principles, it cannot be justified on principle. In the analogous case of the

provision of the former probate code authorizing an appeal from an order, judgment, or decree "within thirty days after notice" thereof, we construed the word "notice" in accordance with the general rule to mean formal, written express notice. Timm v. Brauch, 133 Minn. 20, 22, 157 N. W. 709, 710. If the question were *res integra* in this state, we should feel inclined to adopt the New York rule for this class of cases the same as we did in Timm v. Brauch, *supra,* for those arising under the former probate code. But, since our construction of the statute in question has been acquiesced in for over 70 years—since Wieland v. Shillock, 23 Minn. 227—we think that the construction has become part of the statute through legislative acquiescence and implied approval, and that consequently we are not at liberty to adopt a different one. Consequently, while it was not necessary in order to bar defendants' application for relief from the judgment that they should have received a formal, written express notice thereof, it was necessary that they should have received in some way *actual notice* of it.

*Actual notice,* like any other fact, may be proved by circumstantial, as well as by direct, evidence. When the trial judge decides a motion for relief from a judgment in cases of this kind, he necessarily determines the existence of actual notice as a fact from the evidence presented by the affidavits. Flanery v. Kusha, 147 Minn. 156, 179 N. W. 902. See, Bentley v. Kral, 223 Minn. 248, 26 N. W. (2d) 532. By necessary implication, it is clear that the trial judge adopted defendants' version of the facts. The question, then, is whether their evidence reasonably supports the finding implicit in the trial judge's decision that they did not have actual notice of the judgment more than one year prior to making the application for relief from the judgment. At the outset, formal, written express notice may be eliminated, since none was given. Likewise, there is no direct evidence that defendants had actual notice. That leaves for consideration the circumstantial evidence in the case.

While there is proof that the summons was served on Charles personally, there is no proof at all that Ellen had actual knowledge of the commencement of the action. But whether they actually knew of

the service of the summons is not important. Actual knowledge of the service of the summons and complaint is not actual notice of the judgment. Wieland v. Shillock, 23 Minn. 227, *supra;* Minnesota Thresher Mfg. Co. v. Holz, 10 N. D. 16, 84 N. W. 581. In the last-cited case the authorities are collected and reviewed. As we said in Wieland v. Shillock (23 Minn. 228):

"It is provided in Gen. St. c. 66, § 105, that the court may, in its discretion, at any time within one year after notice thereof, relieve a party from a judgment taken against him through his surprise or excusable neglect. The meaning of this is that the court in which the judgment is rendered may afford the relief mentioned, within one year after the party seeking the relief has actual notice of the judgment. *To hold, as suggested by plaintiffs' counsel, that the personal service of the summons in the action is notice of the judgment would render the language of the statute meaningless."* (Italics supplied.)

How could it be otherwise? In the very nature of things, a party can have no actual notice of a judgment until it is rendered. Jernigan v. Jernigan, 178 N. C. 84, 86, 100 S. E. 184, 185. To hold otherwise would be to apply the doctrine of constructive notice where it has no application and where only actual notice will suffice. Hence, the fact that the summons was served in itself is no notice of the judgment subsequently entered. The fact that the defendant knew that the summons was served on him might be important in determining whether he had actual notice of the judgment, where there is other evidence which, standing alone, tends to show that the defendant had such notice, but not otherwise. Absent such evidence, a finding that defendant had actual notice of the judgment is not justified, even though he knew that the summons had been served on him. It remains, then, to apply the rules of law to the evidence.

We think the finding that Ellen had no actual notice of the judgment should be sustained. It is undisputed that no personal service of the summons was made on her. Her denial that she knew of the pendency of the action is uncontradicted. The levy of execution on

the Willys coupé is without evidentiary significance in this connection, because in no view does it support an inference that she knew of the judgment—there is no evidence that she owned the automobile, that she knew of the execution, that she knew of the levy, or that she had knowledge of any fact to bring home to her the fact that judgment had been entered.

Likewise, we think the evidence supports the finding that Charles did not have actual notice of the judgment. True, the summons was served on him personally. But, for the reasons already stated, the fact that he knew that the summons was served on him was of itself no actual notice of the judgment subsequently entered. There could be no finding that he had *actual notice* of the judgment unless the other evidence establishes that fact. This we think it fails to do. It is clear that he is a man of limited education and experience. While a lawyer might understand all the recitals in an execution issued to the sheriff of a county other than that in which the judgment was rendered, in an inventory on execution and in a sheriff's notice of sale, a layman might not. If Charles did not understand what the papers meant, they of course conveyed no actual notice to him. Flanery v. Kusha, 147 Minn. 156, 179 N. W. 902, *supra.* In Butler v. Mitchell, 17 Wis. 54, where men of some experience acting as trustees were sued individually and as trustees for attorneys' fees and mistakenly believed that they were sued only as trustees, the court held that, while it might be clear to a lawyer what the summons and complaint meant, a layman might well not understand them. The court said (17 Wis. 62) :

"* * * A lawyer might have understood it from either. But one not a lawyer, acting in an official capacity as trustee, and knowing that a suit had been brought against him and his cotrustees for services rendered at their request, might very naturally suppose that he was not to be held personally liable."

Furthermore, since the question here is whether Charles derived knowledge of the judgment from the papers, it was permissible for him to testify, as he did by his affidavit, directly to the fact. Ganser

v. Fireman's Fund Ins. Co. 38 Minn. 74, 35 N. W. 584; Berkey v. Judd, 22 Minn. 287. In Commonwealth Title I. & T. Co. v. Dakko, 89 Minn. 386, 392, 94 N. W. 1088, 1091, we said:

"We are not, however, to be understood as holding that, where the issue is whether a party understood the contents or legal effect of a written instrument, he may not testify directly as to his understanding, for he may do so."

See, 2 Dunnell, Dig. & Supp. § 3231. The weight of authority is in accord. 1 Jones, Evidence (4 ed.) § 170.

The trial judge was not required as a matter of law to reject Charles' version as to his understanding of what the papers served on him were. He did not in fact understand what the papers related to. Under the circumstances, unless Charles knew what was in the papers served on him, he not only had no reason to believe that they had any connection with any legal proceedings against him, but he reasonably might have believed that they might have something to do with difficulties his son was having in connection with his membership in the livestock exchange. On the one hand, what reason was there, if the note had been paid as he believed, for proceedings against him to enforce payment of it? Of course there was none. On the other hand, his son was engaged actively in the livestock business and was a member of a livestock exchange. Conceivably, because of those facts, he might have become involved in some difficulties. That part of the papers which was prominent and would catch the eye—the indented and boxed-in portions—referred only to membership rights in the livestock exchange and in no way referred to the note or the judgment on which liability was predicated. The son had such membership rights; Charles did not. It was not unreasonable, therefore, for Charles to conclude that the papers referred to some trouble his son was having with the livestock exchange. The trial judge was justified in so holding, and that consequently Charles derived from the papers no actual notice of the judgment. In coming to this conclusion, we think that Charles should be held to no higher degree of accountability with respect to

his knowledge of the papers served on him than the experienced men of affairs acting as trustees were held to in Butler v. Mitchell, 17 Wis. 54, *supra*, a case which so far as its controlling facts are concerned is indistinguishable from the one at bar.

While almost ten years elapsed between the time of the entry of the judgment and the commencement of the action thereon by which defendants obtained actual notice thereof—from August 8, 1935, to July 23, 1945—and while an additional ten months elapsed between the commencement of the action on the judgment and the application for relief therefrom—from July 23, 1945, to May 22, 1946—the lapse of such time did not bar defendants' application. The time during which defendants had no actual notice of the judgment is of no importance at all. As said in Kaplan v. Radford, 161 N. Y. S. 374, 375:

"The length of time between the entry of the judgment and the making of the motion should not be considered upon the question of laches if the judgment was obtained * * * without the appearance of the defendant. Only the time between the date of defendant's knowledge or information as to the existence of the judgment and the making of the motion should be considered, * * *."

Lapses of time between the date of entry of judgment and that of defendant's acquisition of actual notice of that fact similar to the one involved here have been held no bar to relief. Isensee Motors v. Rand, 196 Minn. 267, 264 N. W. 782 (over five years) ; McMurran v. Bourne, 81 Minn. 515, 84 N. W. 338 (over seven years). How could they, if the year begins to run, as it does, from the time of defendant's actual notice of the judgment? After all, by failing to serve defendants with notice of the judgment plaintiff left the matter of notice open. A plaintiff can control the matter by giving notice in this as in other cases.

The ten-month period from the time of notice of the judgment to the application for relief from it bears only on the question of laches. During this time the parties litigated the question whether defendants were entitled to assert in the action on the judgment their de-

fenses to the cause of action on which the judgment was predicated. Immediately after that question was decided against defendants they applied for relief from the judgment. Time consumed in good-faith litigation of matters involved in defense against the judgment does not establish laches as a matter of law. Flanery v. Kusha, 147 Minn. 156, 179 N. W. 902, and Butler v. Mitchell, 17 Wis. 54, *supra.*

In conclusion, we make it clear that the statute intends that in cases of this kind the defendant has one year after *actual notice* in which to apply for relief from the judgment and that the doctrine of *constructive notice* may not be resorted to for the purpose of establishing *actual notice.* While *actual notice* may be proved by either direct or circumstantial evidence, the proof must establish such notice as a fact. Evidence that the defendant knew that the summons was served on him of itself is no proof that he had *actual notice* of the judgment. If there is anything to the contrary in our prior decisions, it is hereby overruled.

We should add that divorce cases such as Williams v. Williams, 221 Minn. 441, 22 N. W. (2d) 212, are not in point, because they do not come under the statute in question. Cahaley v. Cahaley, 216 Minn. 175, 12 N. W. (2d) 182, 157 A. L. R. 1. Likewise, cases like Holmes v. Campbell, 13 Minn. 58 (66), where the party has appeared, participated in the proceedings, and then defaulted are an exception to the rule. See, 34 C. J., Judgments, § 487; 49 C. J. S., Judgments, § 288.

■ An assignee of a judgment in good faith and without notice takes subject to existing equities between the original parties. Way v. Colyer, 54 Minn. 14, 55 N. W. 744; Brisbin v. Newhall, 5 Minn. 217 (273); Minnesota Thresher Mfg. Co. v. Holz, 10 N. D. 16, 84 N. W. 581. Appellant took subject to any defenses existing at the time of the assignment between his assignor and defendants. The case of Cremer v. Michelet, 114 Minn. 454, 131 N. W. 627, cited by appellant as contra, does not sustain his position.

Affirmed.