STATE EX REL. WILLIAM KRUSE v. KIRBY WEBSTER
AND OTHERS.
JOE BRENNER, INTERVENER.[1]

June 2, 1950.

No. 35,156.

[1]Reported in 43 N. W. (2d) 116.

C. A. *(Gus) Johnson*, for appellant (relator below).
*Wilson, Blethen & Ogle*, for intervener-respondent.

KNUTSON, JUSTICE.

This is an appeal from an order of the district court quashing a writ of certiorari to review an examination and attempted certification for the position of chief of police for the city of Mankato. The same matter has been here before (State ex rel. Brenner v. Hodapp, 230 Minn. 208, 41 N. W. [2d] 188), and only those facts, in addition to those set forth in our former opinion, necessary to a determination of the questions here involved will be stated.

Pursuant to L. 1929, c. 299, as amended (the same as M. S. A. 419.01 to 419.18), the Mankato city council on April 27, 1937, by resolution, created and established a civil service commission for its police department. In compliance with the provisions thereof, the commission appointed pursuant to such resolution adopted and published civil service rules on July 31 of the same year.

During December 1947, William Kruse, Joe Brenner, one E. A. Vanthuyne, and others took an examination held by the police

civil service commission for the office of chief of police. Vanthuyne received the highest mark, and his name was certified to the mayor and council as the man eligible, pursuant to which he was appointed. He held office until January 31, 1949, at which time his resignation became effective. On January 13, 1949, the civil service commission notified the mayor and common council that it had accepted the resignation of Vanthuyne and that Brenner was the next on the list and eligible for appointment. The council did not appoint Brenner, but, instead, appointed Kruse as acting chief of police. He still holds that position.

On June 1, 1949, Brenner, who is intervener and one of the respondents here, obtained a writ of mandamus to compel the council to appoint him chief of police. We considered certain questions involved in that matter in State ex rel. Brenner v. Hodapp, 230 Minn. 208, 41 N. W. (2d) 188, *supra*. On June 2, 1949, Kruse petitioned the district court for and obtained a writ of certiorari to review the validity of the examination held in December 1947 and the eligibility of Brenner to the position. Thereafter, the court made findings of fact and conclusions of law quashing the writ of certiorari upon the ground that Kruse had been guilty of laches in obtaining the writ. This appeal followed from the court's order.

The only question before us is whether the court's findings of laches can be sustained. We do not have before us the merits of the controversy insofar as it affects the validity of the purported examination and certification of eligibility.

Rule 16 of the commission's rules and regulations reads:

"Within ten (10) days following the approval of any eligible list by the Commission, the Secretary shall send to each testee a written report of his total weighted score, and if his name is placed on the eligible list, of his relative standing on the list. Any testee who fails to have his name placed on the eligible list shall be notified of that fact."

It is conceded that no written report has ever been sent or furnished to Kruse, Brenner, or to any other person who took the examination involved. M. S. A. 606.01 provides:

"No writ of certiorari shall be issued, to correct any proceeding, unless such writ shall be issued within 60 days after the party applying for such writ shall have received due notice of the proceeding sought to be reviewed thereby."

Section 606.02 provides:

"Such writ must also be served upon the adverse party within such period of 60 days."

In In re Judicial Ditch No. 2, 163 Minn. 383, 202 N. W. 52, 204 N. W. 318, we construed the term "due notice" as used in this statutory provision, holding that written notice was required in order to set the statutory limitation of time in operation. We there said (163 Minn. 384, 202 N. W. 53):

"To set at rest differences of opinion among members of the bar as to the meaning of this provision, it is proper to say that the construction we place upon [G. S. 1913] section 8313 is that the time within which the writ may be issued does not begin to run until written notice of the order or other proceeding to be reviewed has been served upon the party adversely affected or his attorney, and that actual notice does not take the place of such written notice."

Intervener contends that the holding of this case has been weakened, if not modified, by In re Consolidation of County and Judicial Ditches, 165 Minn. 493, 206 N. W. 718. In that case, the order sought to be reviewed was made on February 11, 1925. The only formal written notice was served in August. On June 30, a writ of certiorari was applied for and issued. It was served on the judge on July 11, but not until October 9 was it served on the adverse party. The court merely held that the 60-day period allowed for service of the writ under § 606.02 had run, even reckoning from the date of the issuance of the writ, and that it must be assumed that the person applying for the writ had notice at the time of making such application and also that formal notice after the application and issuance of the writ would serve no useful pur-

pose. The case did not reach the question here involved. Nor does Haimila v. The Opsahl Co. 208 Minn. 605, 293 N. W. 599, hold to the contrary.

We have often held that certiorari as used in this state is not the common-law writ, "but rather a writ in the nature of certiorari." It is employed strictly in the nature of a writ of error or an appeal. Its legitimate office is to review and correct decisions and final determinations of inferior tribunals. Its office is not to restrain or prohibit, but to annul. 1 Dunnell, Dig. & Supp. § 1391; State ex rel. Nordin v. Probate Court, 200 Minn. 167, 169, 273 N. W. 636, 637; Johnson v. City of Minneapolis, 209 Minn. 67, 295 N. W. 406; State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544.

The construction so placed on the notice required under § 606.01 harmonizes this section of our statute with that relating to appeals from orders and judgments insofar as establishing certainty respecting the commencement of the running of the time for appeal is concerned.

Section 605.08 provides that appeals may be taken from a judgment within six months *after the entry* thereof and from an order "within 30 days *after written notice* of the same from the adverse party." (Italics supplied.) In the case of an appeal from an order, the time does not begin to run until *written* notice is served. Actual notice does not suffice.

In Levine v. Barrett & Barrett, 83 Minn. 145, 85 N. W. 942, 87 N. W. 847, the court made an order denying the motion on February 13, 1901. Defendant served written notice on plaintiff of the making of the order, but plaintiff did not serve such notice on defendant. On April 20 defendant appealed. We refused to dismiss, holding that service of the written notice by defendant on plaintiff did not set the statute running as against defendant, even though he had served written notice on plaintiff, which did set the statute running as against plaintiff. See, also, Maurin v. Carnes, 80 Minn. 524, 83 N. W. 415; Strand v. C. G. W. R. Co. 147 Minn. 1, 179 N. W. 369.

In Industrial Loan & Thrift Corp. v. Benson, 221 Minn. 70, 21 N. W. (2d) 99, an action on a promissory note was tried on September 11, 1935. Defendant made no appearance. Findings of fact and order for judgment were filed September 19, 1935. Judgment was not entered until December 12, 1944. On December 21, 1944, defendant moved for an order vacating and setting aside the judgment on the ground that plaintiff was guilty of laches in failing to seasonably prosecute the action to judgment. We held that, inasmuch as it was within the power of defendant as well as plaintiff to enter judgment, he was in no position to complain of the delay.

The same may well be said of respondent civil service commissioners in the instant case. The failure to set the statute running is solely attributable to the commission's failure to serve the written notice required by § 606.01, as construed by our cases.

In Timm v. Brauch, 133 Minn. 20, 22, 157 N. W. 709, 710, we had under consideration the provision of our former probate code, G. S. 1913, § 7492, which provided that appeals may be taken from the decisions of the probate court "within thirty days after notice of the order, judgment or decree appealed from." We there held that notice, as required by the statute, meant a formal written notice.

In Industrial Loan & Thrift Corp. v. Swanson, 223 Minn. 346, 26 N. W. (2d) 625, 177 A. L. R. 244, we had under consideration the statute respecting the right to apply for leave to open a default judgment. While we there held that the rule in this state has been that notice as required in this statute meant actual notice as distinguished from constructive notice, we indicated that we did not approve of the extension of that doctrine and that the better rule probably would be to require written notice, which is the rule followed in New York and in many other states and is the general rule throughout the country.

Intervener next contends that Kruse should now be barred from contesting the validity of the examination on account of the delay, irrespective of the statutory requirement of service of notice to

limit the time for review by certiorari. This contention is based on the argument that Kruse had knowledge of the certification of intervener and that, having such knowledge, it was his duty to act promptly.

The difficulty with this argument is that Kruse had no reason to do anything so long as the city authorities did not attempt to act upon the certification of Brenner as a valid one. As soon as intervener sought to compel the city to act upon such certification, Kruse promptly applied for a writ of certiorari. There was no occasion to act sooner.

Intervener also contends that now to hold that the examination was improperly held and the certification was invalid affects so many people and involves such a public interest that Kruse should be precluded from questioning the validity of the examination on that account.

We are not impressed with this argument. We do not believe that the rights of such other employes are before us; but, if they are, such employes are in no position to complain. If they have occupied positions to which they are not entitled, it can hardly be maintained in their behalf that a status unlawfully acquired has become lawful merely by virtue of the lapse of time.

The establishment of a civil service commission by municipalities is permitted by our statutes in order that municipalities availing themselves of such provisions may accomplish certain definite objects. Not the least of these is the establishment of security of tenure in offices affected. Once civil service is established, there must be at least substantial compliance with the laws and rules appertaining thereto if it is to be of any value. There would be little security afforded by civil service if that were not true. Instead of creating confusion, as intervener argues, requirements that there be substantial compliance with civil service rules lead to certainty. Confusion results when municipal authorities seek to circumvent the established rules or to ignore them. If the examination and resulting certification did not comply with the laws and with the rules of the civil service commission, we cannot see

that prejudice will result to anyone if a legal and proper examination be held now in order that applicants for the position involved may be duly and legally certified.

It is ordered that the decision of the district court be reversed and that the case be remanded with instructions to try the issues involved on the merits.

Reversed.

ON APPEAL FROM CLERK'S TAXATION OF COSTS.

On July 14, 1950, the following opinion was filed:

PER CURIAM.

Intervener appeals from appellant's taxation of costs.

The only issue before us on this appeal was whether the trial court's finding of laches could be sustained. Appellant prevailed on this issue. In attempting to have us consider the case on its merits, even though the trial court had made no findings thereon, appellant printed a large portion of the record, including numerous exhibits. For such printing and the portions of appellant's brief dealing with matters not before us for consideration, he is not entitled to tax his disbursements.

It is accordingly ordered that appellant's disbursements for printing the record be limited to the sum of $103.50 and for printing his brief to the sum of $57.50 and that other disbursements involved in the printing of the record and brief be disallowed.

MR. JUSTICE THEODORE CHRISTIANSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.