ERVIN OLSON, INDIVIDUALLY AND AS FATHER AND NATURAL GUARDIAN OF EDWARD OLSON, A MINOR, v. VILLAGE OF BABBITT AND OTHERS.

189 N. W. (2d) 701.

August 20, 1971—No. 42245.

*Carroll, Cronan, Roth & Austin* and *George S. Roth,* for appellants.

*John E. Manthey* and *Vernon D. Saxhaug,* for respondent.

Heard before Knutson, C. J., and Murphy, Rogosheske, Peterson, and Kelly, JJ.

KELLY, JUSTICE.

Appeal by the village of Babbitt and the Babbitt Recreation Commission from portions of an order denying a new trial and a judgment of the district court determining that appellants recover nothing on a cross-claim for contribution or indemnification against their codefendant, Illinois Fireworks Company, Inc., of Danville, Illinois.

Appellant village purchased a fireworks display from respondent, Illinois Fireworks, and delegated to its fire chief, Harold Backman, the responsibility for shooting them off in a field adjacent to town on the evening of July 4, 1967. The following day a group of boys, ranging in age from 9 to 13 years 10 months, searched the display site and found a firework which had been

shot into the air but had failed to explode. Edward Olson, the oldest member of the group, cut a hole in the side of the firework canister, poured powder from it and ignited the powder several times. On the last ignition the firework exploded, causing severe injury to Edward's left hand. Edward's father, Ervin Olson, individually and as natural guardian of Edward, commenced an action against the village of Babbitt, its recreation commission, and Illinois Fireworks to recover damages for the injury. Pursuant to jury interrogatories, the district court ordered judgment in favor of plaintiffs against defendant village; in favor of Illinois Fireworks against plaintiffs; and dismissing the cross-claims of the village and Illinois Fireworks against each other for contribution or indemnification. Appellants' subsequent alternative motion for judgment notwithstanding the verdict, amended findings of fact and conclusions of law, or for a new trial on all issues, was denied by the trial court, subject to remittitur. Plaintiffs agreed to accept the reduced awards, and judgment was entered accordingly. The village and the commission thereupon appealed from the order denying their alternative motion and from the judgment. Appellants subsequently settled with plaintiffs and continue only the appeal from the adverse determination on the cross-claim against Illinois Fireworks for contribution or indemnification.

Two issues are before this court: (1) Whether there is any evidence to sustain the answer to special interrogatory No. 3, by which the jury found that the firework which exploded was not used for a "purpose intended or reasonably expected" by Illinois Fireworks; and (2) whether the evidence entitles the village to contribution or indemnification.

We affirm the determination of the trial court on both issues.

■ The theory advanced by plaintiffs against respondent Illinois Fireworks in the trial below was strict liability in tort based on an allegedly defective fuse construction in the firework. The trial court based its judgment on the jury answers to the following special interrogatories:

"1. Was Defendant Illinois Fireworks Company engaged in the business of manufacturing fireworks?
Yes X    No ——

"2. Was the firework expected to and did it reach and was it properly fired by the Village of Babbitt without substantial change in the condition in which it was sold?
Yes X    No ——

"3. Was the firework found in the field by the boys used by the boys for a purpose intended or reasonably expected by the Illinois Fireworks Company?
Yes ——    No X

"4. Was the firework found by the boys defective?
Yes X    No ——

"5. Was the firework found by the boys unreasonably dangerous to the person when using the firework?
Yes X    No ——

"6. Did Edward Olson sustain injuries directly resulting from the use of the firework that was found in the field?
Yes X    No ——"

Appellants contend that the use of this firework by a boy of Edward Olson's age was one which could be "reasonably expected" by Illinois Fireworks in light of (1) respondent's knowledge of the dangerous nature of fireworks and the possibility of "duds"; and (2) the absence of firing instructions warning of "duds" and the need to police the firing area for them.

We reject this contention, as there is ample evidence from which the jury could draw the inferences necessary to support a negative answer to interrogatory No. 3.

It is common knowledge that fireworks are a dangerous instrumentality. In fact, this state has restricted their sale and use only to municipalities and fair associations, or such other organizations as are able to secure a display permit upon a showing that the operator is competent and that the display will be fired so as not to endanger any person or be hazardous to property. Minn. St. 624.20 to 624.25. Under these laws the permittee is

prohibited from further transfer of the fireworks. It is the apparent purpose of these sections to delimit the class of persons handling fireworks to those who are competent and will exercise a very high degree of care in their use.

Illinois Fireworks was aware of this statutory requirement and procured from the village a copy of the permit necessary to allow display of the fireworks before shipment to appellant. Thus, at the very outset, it appears that Illinois Fireworks was taking those precautions which would reasonably assure that its product would be used only for display by the village. The manufacturer did send numerous instructions with the fireworks which were ignored in a number of instances.[1] Appellants make much of the fact that the instruction sheet accompanying the fireworks contained no instruction directing a policing of the display area for "duds" after firing, but the sheet did warn that a malfunction might occur if the fireworks were mishandled or improperly loaded or fired. In fact, Harold Backman, the fire chief who was responsible for firing the display, realized that it was possible a shell or firework might not explode. He testified that as a part of the display firing procedure employed by

---

[1] Respondent's Exhibit No. 10 stated: "NOTE—FIRING MORTARS SHOULD BE TILTED SLIGHTLY AWAY FROM AUDIENCE." Chief Backman testified that the mortars were angled to fire generally toward the crowd.

Exhibit No. 10 stated: "To fire shells two men are sufficient; one to load mortars all the time and the other to ignite them. Too many persons in the firing of shells will only result in confusion and it is dangerous." Chief Backman testified that he had 10 to 12 men assisting him in firing the display.

Exhibit No. 10 stated: "Open your shell boxes before dark. Then you should sort your shells, diameter by diameter and put each diameter shell in a separate box (9" shells in one box, 12" shells in one box, 15" shells in one box, etc.) with as many size diameter shells as you have. Then set each box 30 feet behind the same diameter mortar. BE SURE EACH BOX IS COVERED WITH A TARPAULIN." Chief Backman testified that all the shells were sorted and stacked on one tarpaulin; that all the shells were stacked by the four sizes in an area not larger than 6 feet; that the tarpaulin was located 100 to 125 feet behind the mortars.

the village, two men were assigned to watch that the fireworks which left the mortars exploded in the air. These men did not report any "duds"; yet there were apparently at least two shells fired which failed to explode in the air.[2]

Presumably the purpose of having men watch for "duds" would be that of policing the area if any of the fireworks failed to explode. Despite respondent's warning that "duds" could occur; despite the fire chief's special appreciation of this warning; and despite the commonly accepted danger of fireworks and the marking on each individual firework, "Dangerous Explosive," Backman and his assistants failed to search the display area for fireworks which had possibly malfunctioned. From the warnings given and the fact that the purchaser here was a village holding a state permit, it was permissible for the jury to draw the inference that Illinois Fireworks could reasonably anticipate that the village would take all reasonable steps to eliminate the possibility that a "dud" might fall into the hands of a youngster and then be used in a manner not intended nor reasonably expected. Edward Olson's use of this firework was one which might be reasonably expected only if we assume that it will fall into his hands. However, here there was no reason for respondent to expect that Edward would become a "consumer" or "user" of this product within the requirements for strict liability set forth in Restatement, Torts (2d) § 402A and adopted by this court.[3]

---

[2] A second unexploded firework was found in the display area on July 6, 1967.

[3] Restatement, Torts (2d) § 402A, provides: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a)  the seller is engaged in the business of selling such a product, and

"(b)  it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2)  The rule stated in Subsection (1) applies although

Under the circumstances of this case, the jury's answer to special interrogatory No. 3 cannot be disturbed.

■ As there is thus no liability to plaintiff Edward Olson which is common to appellant village and respondent, there can be no contribution between these parties. Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. (2d) 843.

■ We also reject the contention that the evidence entitled the village to indemnification by respondent.

Indemnification, like contribution, is basically governed by judicial concepts of equity. In Minnesota recovery of indemnification by a joint tortfeasor has been limited to the following situations (258 Minn. 372, 104 N. W. [2d] 848):

"(1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.

"(2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.

"(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

"(4) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

---

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Comment 1 thereto provides: "* * * Consumption includes all ultimate uses *for which the product is intended* * * *." (Italics supplied.) In McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 333, 154 N. W. (2d) 488, 497, in which this court essentially adopted the rule of strict liability as stated above, we said that "a manufacturer * * * has a duty to use reasonable care in designing its product *so that those it should expect will use it are protected from unreasonable risk of harm while the product is being used for its intended use*." (Italics supplied.)

"(5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved."

Appellants argue that certain language in Illinois Fireworks' descriptive brochure from which the village ordered its fireworks created an express warranty between the parties. Appellants do not specify the language upon which they rely. They also claim that there was an implied warranty of merchantability or fitness for the purpose. Appellants would base their claim for contribution or indemnity on these warranties.

Because the general area in which we are dealing is essentially equitable, we have given appellants the benefit of our doubts as to the seriousness of this claim in light of the very cursory treatment thereof. We conclude that no express warranty was created by any language in the brochure. Minn. St. 336.2-313. Under Minn. St. 336.2-314, an implied warranty of merchantability requires that the goods "are fit for the ordinary purposes for which such goods are used." The fireworks in the instant case were not used by the youngsters for the ordinary purposes for which such goods are used. We conclude that such a warranty is not a basis for contribution or indemnity.

The claim that respondent breached a duty to appellants in failing to adequately warn of the possibility of a "dud" and that by reason thereof contribution or indemnity should have been granted to the village is foreclosed by our discussion of appellants' first claim.

Affirmed.

ROGOSHESKE, JUSTICE (concurring specially).

On the basis upon which this case was submitted for review, I concur in the result.