245 N.W.2d 844 (1976)
TRAVELERS INDEMNITY COMPANY, Respondent,
v.
Michael VACCARI, Defendant,
Dairyland Insurance Company, Appellant.
No. 45981.
Supreme Court of Minnesota.
August 20, 1976.
*845 Jerome E. Kline, Bloomington, for appellant.
Richards, Montgomery, Cobb & Bassford and Greer E. Lockhart and James B. Proman, Minneapolis, for respondent.
Heard before ROGOSHESKE, MacLAUGHLIN and MARSDEN, JJ., and considered and decided by the court en banc.
MacLAUGHLIN, Justice.
This is a subrogation action by plaintiff-insurer, The Travelers Indemnity Company, against Michael Vaccari and his liability insurer, Dairyland Insurance Company, to recover medical payments made by Travelers to its insured. The trial court concluded that a release obtained from Travelers' insured by Vaccari and Dairyland did not extinguish Travelers' subrogation rights since the release was obtained subsequent to their notice of Travelers' subrogation claim. We affirm.
On October 30, 1970, a car driven by Vaccari collided with a car in which Constance E. Whaling was a passenger. Mrs. Whaling was injured in the accident and incurred substantial medical expenses. Travelers paid Mrs. Whaling $5,000 for her medical expenses pursuant to an automobile insurance policy issued to her husband, Richard J. Whaling. The insurance policy provided that Travelers would be subrogated to the rights of any person to whom it made medical payments.
On June 5, 1973, Vaccari and his automobile liability insurer, Dairyland, were placed on notice of Travelers' subrogation interest. On June 8, 1973, a jury in Anoka County District Court found that Vaccari's negligence was the sole cause of the automobile accident in which Mrs. Whaling was injured. On July 12, 1973, Vaccari and Dairyland paid Mrs. Whaling $10,000 and obtained a general release from her.
Travelers brought the present action to enforce its subrogation claim against Vaccari and Dairyland. The trial court concluded that since Vaccari and Dairyland had notice of Travelers' subrogation interest prior to obtaining the general release from Mrs. Whaling, the release did not extinguish Travelers' subrogation rights. Consequently, the trial court ordered judgment in the sum of $5,000 against Vaccari and Dairyland. Only Dairyland appeals from the judgment.[1]
The issue raised on this appeal is whether an insurer may enforce subrogation rights against a tortfeasor and the tortfeasor's liability insurer to recover medical payments made by plaintiff to its insured in a case in which the tortfeasor and his liability insurer have notice of plaintiff's subrogation interest and notwithstanding this notice unilaterally procure a general release from plaintiff's insured in disregard of plaintiff's subrogation interest.
The insurance policy issued by Travelers provided that Travelers would be subrogated to the rights of any person to the extent of any medical payments made *846 to that person. In National Union Fire Ins. Co. v. Grimes, 278 Minn. 45, 153 N.W.2d 152 (1967), we upheld the validity of this type of subrogation clause as between the insurer and its insured, but specifically reserved ruling on the validity of the subrogation clause as against a third-party tortfeasor. We stated (278 Minn. 49, 153 N.W.2d 155):
"If the present action were one in which plaintiff was attempting to assert a claim for the medical expenses paid by it against the tortfeasor who caused the injuries, the rules forbidding the assignment of claims for personal injuries might be applicable. But this is not such a situation and we need not anticipate it."
We now hold that a subrogation clause of this kind which gives an insurer a right to subrogation against a third-party tortfeasor for medical payments actually made is a valid and enforceable contractual provision. It is well established as a principle of equity that upon payment of a loss an insurer is entitled to pursue those rights which the insured may have against a third party whose negligence or wrongful act caused the loss. Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co., 291 Minn. 97, 189 N.W.2d 404 (1971). Applying this principle, the majority of jurisdictions have upheld the validity of insurance provisions which confer on an insurer a right of subrogation against third-party tortfeasors for medical payments actually made to its insured.[2]
We are not persuaded by Dairyland's argument that this type of subrogation clause constitutes an assignment of a cause of action for personal injuries. An insurer's subrogation to its insured's right of recovery against a tortfeasor is distinct from an assignment of a personal action. Subrogation involves the substitution of an insurer by operation of law to the rights of the insured because of the insurer's pre-existing duty to pay the insured for the loss. In contrast, an assignment involves a transfer of a legal claim from an injured party to a volunteer who was under no pre-existing duty to compensate the injured party. Moreover, under subrogation an insurer's recovery is limited to the amount paid to the insured, whereas there is no such limitation on an assignee's recovery. Thus, subrogation simply does not create the same risk of maintenance or champerty as does assignment. See, DeCespedes v. Prudence Mutual Cas. Co., 193 So.2d 224 (Fla.App.1966).
We are also not persuaded that an insurer's subrogation to its insured's right of recovery for medical expenses constitutes a *847 splitting of a cause of action in the instant case. It is generally held that the tortfeasor waives his right to invoke the rule against splitting a single cause of action where the tortfeasor has notice of the insurer's subrogation claim prior to settling with the insured. Wolverine Ins. Co. v. Klomparens, 273 Mich. 493, 263 N.W. 724 (1935); Potomac Ins. Co. v. MacNaughton, 191 Misc. 362, 77 N.Y.S.2d 110 (1948). See, generally, Annotation, 92 A.L.R.2d 102, 148. Since one of the principal reasons for the rule against splitting actions is to protect a defendant from unnecessary litigation and cost, the defendant waives this protection if, with notice of an insurer's claim, he voluntarily enters into a separate settlement with the insured. We also note that some courts have simply held that the rule against splitting a cause of action does not apply to an insurer's subrogation interest. As was stated in Nationwide Ins. Co. v. Steigerwalt, 21 Ohio St.2d 87, 89, 255 N.E.2d 570, 571 (1970):
"* * * [F]or the limited purpose of prosecution of a claim under a policy of automobile insurance, a single cause of action may be divided to the extent that the insurer, subrogated to a part of a claim assigned by the insured, may prosecute its claim in a separate action against the tort-feasor."
See, also, Rosenthal v. Scott, 150 So.2d 433 (Fla.1963).
In sum, we conclude that the arguments against allowing an insurer subrogation to the rights of its insured are outweighed by the equitable consideration that
"* * * a wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability because the insured had had the foresight to obtain, and had paid the expense of procuring, insurance for his protection; since the insured has already been paid for his harm, the liability of the third person should now inure for the benefit of the insurer." 16 Couch, Cyclopedia of Insurance Law (2 ed.) § 61:18, p. 248.
This type of subrogation provision minimizes duplication of coverage, reduces premiums, and promotes an equitable allocation of loss. Therefore, we adopt the majority rule and recognize an insurer's right to subrogation against a third-party tortfeasor, assuming there is appropriate notice.
In the instant case, Travelers informed both Vaccari and Dairyland of its subrogation interest. Despite notice of this interest, Vaccari and Dairyland settled with Travelers' insured, Mrs. Whaling, without heed to Travelers' claim, and obtained a general release from her. Since, as a general rule, a subrogee is entitled to no greater rights than those which the subroger possesses,[3] the question which then arises is whether the general release executed by Mrs. Whaling extinguished Travelers' subrogation claim.
While this court has previously indicated that "an insured may defeat the insurance company's rights of subrogation by * * * settling with the wrongdoer,"[4] we have never directly considered the issue of whether a settlement extinguishes an insurer's subrogation rights when that settlement is procured by a tortfeasor or his liability insurer after notice of the insurer's subrogation claim. The general rule in most jurisdictions is that when a tortfeasor or the tortfeasor's liability insurer, with notice of an insurer's subrogation claim, procures a general release by making a settlement with the insured, the release will not affect the insurer's right of subrogation. Vigilant Ins. Co. v. Bowman, 128 Ga.App. 872, 198 S.E.2d 346 (1973); Transamerica Ins. Co. v. Barnes, 29 Utah 2d 101, 505 P.2d 783 (1972); Hospital Serv. Corp. of Rhode Island v. Pennsylvania Ins. Co., 101 R.I. 708, 227 A.2d 105 (1967). See, generally, Annotation, 92 A.L.R.2d 102. Such a settlement is deemed to be the equivalent *848 of a fraud upon the insurer and thus can have no effect upon the insurer's subrogation rights.
To hold that such a settlement destroys an insurer's subrogation rights would have the practical effect of encouraging a tortfeasor or his liability insurer to disregard notice of an insurer's valid subrogation claim and attempt to procure a general release from the insured. We believe that the tortfeasor and his liability insurer have a duty to act in good faith under such circumstances. Therefore, we hold that where a tortfeasor and his liability insurer willfully disregard notice of the subrogation claim of the injured person's insurer and enter into a separate settlement with the injured person, such a settlement does not defeat his insurer's subrogation rights.
Affirmed.
NOTES
[1] Why Dairyland did not appeal the judgment against its own insured, Vaccari, is unclear.
[2] The insurer's right to subrogation of medical expenses has been judicially upheld in: Shipley v. Northwestern Mutual Ins. Co., 244 Ark. 1159, 428 S.W.2d 268 (1968); Higgins v. Allied Am. Mutual Fire Ins. Co., 237 A.2d 471 (D.C.App.1968); DeCespedes v. Prudence Mutual Cas. Co. of Chicago, Illinois, 193 So.2d 224 (Fla.App.1966); Bernardini v. Home & Auto. Ins. Co., 64 Ill.App.2d 465, 212 N.E.2d 499 (1965); Michigan Medical Serv. v. Sharpe, 339 Mich. 574, 64 N.W.2d 713 (1954); Davenport v. State Farm Mutual Auto. Ins. Co., 81 Nev. 361, 404 P.2d 10 (1965); Busch v. Home Ins. Co., 97 N.J.Super. 54, 234 A.2d 250 (1967); Smith v. Motor Club of Am. Ins. Co., 54 N.J.Super. 37, 148 A.2d 37 (1959); Miller v. Liberty Mutual Fire Ins. Co., 48 Misc.2d 102, 264 N.Y.S.2d 319 (1965); Anderson v. Allstate Ins. Co. 266 N.C. 309, 145 S.E.2d 845 (1966); Travelers Ins. Co. v. Lutz, 3 Ohio Misc. 144, 32 Ohio O.2d 469, 210 N.E.2d 755 (Akron Mun.Ct.1964); Demmery v. National Union Fire Ins. Co., 210 Pa.Super. 193, 232 A.2d 21 (1967); Hospital Serv. Corp. of Rhode Island v. Pennsylvania Ins. Co., 101 R.I. 708, 227 A.2d 105 (1967); Wilson v. Tennessee Farmers Mutual Ins. Co., 219 Tenn. 560, 411 S.W.2d 699 (1966); State Farm Mutual Ins. Co. v. Farmers Ins. Exch., 22 Utah 2d 183, 450 P.2d 458 (1969); Metropolitan Life Ins. Co. v. Ritz, 70 Wash.2d 317, 422 P.2d 780 (1967); Associated Hosp. Serv. Inc. v. Milwaukee Auto. Mutual Ins. Co., 33 Wis.2d 170, 147 N.W.2d 225 (1967).

The validity of such a provision has been rejected in: Harleysville Mutual Ins. Co. v. Lea, 2 Ariz.App. 538, 410 P.2d 495 (1966); Peller v. Liberty Mutual Fire Ins. Co., 220 Cal.App.2d 610, 34 Cal.Rptr. 41 (1963); Wrightsman v. Hardware Dealers Mutual Fire Ins. Co., 113 Ga.App. 306, 147 S.E.2d 860 (1966); Travelers Ind. Co. v. Chumbley, 394 S.W.2d 418 (Mo.App.1965); Lowder v. Okla. Farm Bureau Mutual Ins. Co., 436 P.2d 654 (Okl.1967).
At least one jurisdiction has enacted a statute expressly forbidding the incorporation of a subrogation provision in medical expenses coverage: Va.Code Ann. § 38.1-342.2. (1975 Cum.Supp.).
See, generally, 52 Marquette L.Rev. 445.
[3] Employers Lia. Assur. Corp. v. Morse, 261 Minn. 259, 111 N.W.2d 620 (1961).
[4] Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co., 291 Minn. 97, 99, 189 N.W.2d 404, 406 (1971); National Union Fire Ins. Co. v. Grimes, 278 Minn. 45, 153 N.W.2d 152 (1967).