Charles ALLUM, as father and natural
guardian of Steven John Allum, et
al., Respondents,

v.

MEDCENTER HEALTH CARE,
INC., Appellant.

No. CX–85–428.

Court of Appeals of Minnesota.

July 23, 1985.

W.D. Flaskamp, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondents.

George G. Eck, Dorsey & Whitney, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This is an appeal from a summary judgment in favor of respondents. Appellant claims the trial court erred in concluding it did not have subrogation rights against a third-party tortfeasor and against its insured. We affirm in part and reverse in part.

### FACTS

On September 17, 1981, Steven Allum was seriously injured as a passenger in a car driven by Gregory Nordling. The car was owned by Gregory Nordling's parents, Kenneth and Sally Nordling. The parties stipulated that Gregory Nordling was negligent and that his negligence caused Steven Allum's injuries. After applicable no-fault coverages of $60,000 were exhausted, MedCenter, a not-for-profit health maintenance organization, provided benefits on behalf of Steven Allum in excess of $200,-000 under coverage provided by Steven's father.

The Allums commenced an action against the Nordlings. MedCenter attempted to intervene to protect its rights. The trial court denied MedCenter's motion to intervene, finding MedCenter was adequately protected by its subrogation rights and because the Allums had promised to maintain a $150,000 fund to cover MedCenter's claim. The health service contract between MedCenter and Charles Allum contained the following subrogation clause:

The covered Individual shall cooperate with MedCenter in assisting it to protect its legal rights under these subrogation provisions and acknowledges that MedCenter's subrogation rights under this paragraph shall be considered as the first priority claim against any such third party to be paid before any other claims for general damages by such individual. The Covered Individual shall do nothing to prejudice MedCenter's rights under this provision, either before or after the need for medical services or reimbursement under this Agreement.

MedCenter may, at its option, take such action as may be necessary and appropriate to preserve its rights under these subrogation provisions, including the right to bring a suit in the name of the Covered Individual. MedCenter may, at its option, collect such amounts from the proceeds of any settlement or judgment that may be recovered by such Covered Individual or his legal representative. Any such proceeds of the settlement or judgment shall be held in trust by the Covered Individual for the benefit of MedCenter under these subrogation provisions, and MedCenter shall be entitled to recover reasonable attorneys fees from such individual incurred in collecting proceeds held by him.

Despite this provision and notice of MedCenter's subrogation claim, the Allums settled their claims against the Nordlings and their insurers, Continental Insurance Companies and Auto-Owners Insurance Company. The settlement provided that $150,000

was to be set aside in trust for the purpose of satisfying any of MedCenter's claims that might be awarded in the future. In the settlement, the Allums also agreed to indemnify the Nordlings and their insurers against any claims made against them by MedCenter. The settlement was comprised of a $525,000 lump-sum payment and $775,000 used to purchase an annuity for Steven Allum. The Nordlings' policy limits were $1,300,000. All parties, including MedCenter, stipulated these amounts did not fully and adequately compensate Steven for his injuries.[1]

During this same period, the Allums commenced a declaratory judgment action against MedCenter, seeking a declaration that MedCenter's subrogation claim was invalid. MedCenter counterclaimed, seeking the amounts paid to the Allums. On cross-motions for summary judgment, the trial court granted summary judgment in favor of the Allums, finding MedCenter did not have a valid subrogation claim because Steven Allum was not fully and adequately compensated for his injuries by the settlement. MedCenter did not receive any reimbursement for its expenses and appealed.

## ISSUES

1. Does MedCenter have a cause of action against the Nordlings and their insurers?

2. Is MedCenter entitled to reimbursement from the settlement proceeds under its subrogation clause?

## ANALYSIS

### I.

MedCenter claims it has the right to bring an action against the Nordlings and their insurers (hereinafter referred to as Nordlings) because the Nordlings settled the Allums' claims with knowledge and disregard of MedCenter's subrogation claims. Whether a settlement extinguishes an insurer's subrogation rights when the settle-

ment was procured by the tortfeasor and his insurer after notice of the insurer's subrogation claim was addressed in *Travelers Indemnity Company v. Vaccari,* 310 Minn. 97, 245 N.W.2d 844 (1976).

*Travelers* involved an identical situation where the tortfeasor and his insurers entered into a settlement with Travelers' insured. The Minnesota Supreme Court held that a general release signed by Travelers' insured did not defeat the subrogation claim:

> The general rule in most jurisdictions is that when a tortfeasor or the tortfeasor's liability insurer, with notice of an insurer's subrogation claim, procures a general release by making a settlement with the insured, the release will not affect the insurer's right of subrogation. Such a settlement is deemed to be the equivalent of a fraud upon the insurer and thus can have no effect upon the insurer's subrogation rights.
>
> To hold that such a settlement destroys an insurer's subrogation rights would have the practical effect of encouraging a tortfeasor or his liability insurer to disregard notice of an insurer's valid subrogation claim and attempt to procure a general release from the insured. We believe that the tortfeasor and his liability insurer have a duty to act in good faith under such circumstances. Therefore, we hold that where a tortfeasor and his liability insurer willfully disregard notice of the subrogation claim of the injured person's insurer and enter into a separate settlement with the injured person, such a settlement does not defeat his insurer's subrogation rights.

*Id.* at 102–03, 245 N.W.2d at 847–48 (citations omitted).

■ The *Travelers* rule is applicable in this matter. The Nordlings and their insurers entered into a settlement with the Allums after notice of MedCenter's subro-

---

**1.** Steven died after this stipulation was entered. The parties agree the stipulation is still binding upon them.

gation claim. Therefore, the settlement does not defeat MedCenter's valid subrogation claim. *Id.*

Respondents claim MedCenter does not have a subrogation interest because the settlement did not fully and adequately compensate Steven Allum. The same argument was raised before the Minnesota Supreme Court in *Travelers. See* Appellant's Brief at 4–5, *Travelers Indemnity Company v. Vaccari*, 310 Minn. 97, 245 N.W.2d 844 (1976). The *Travelers* court impliedly rejected this contention.

Respondents cite *Westendorf v. Stasson*, 330 N.W.2d 699 (Minn.1983), as supporting their contention. *Westendorf* held an insurer may not assert its subrogation rights against its insured's settlement proceeds prior to the insured's full recovery for damages. *Westendorf* does not apply to a situation where an insurer seeks to enforce its subrogation rights against a tortfeasor and his insurers. Application of *Westendorf* to preclude an action against the tortfeasor and his insured under these circumstances would eviscerate the rule set forth in *Travelers* and permit fraud upon insurers.

## II.

The Allums' agreement to indemnify the Nordlings and their insurers poses another problem. The inclusion of the indemnification clause cannot be interpreted to defeat the *Travelers* rule because this device could be used in any settlement to defeat an insurer's subrogation rights. Enforcement of this indemnity agreement would allow tortfeasors and their insurers to avoid responsibility for their wrongs.

■ Although the indemnity agreement in this matter is the creation of contract, equitable principles must still be applied. *See Hill v. Okay Construction Company, Inc.*, 312 Minn. 324, 345, 252 N.W.2d 107, 120 (1977). "Indemnification * * * is basically governed by judicial concepts of equity." *Olson v. Village of Babbitt*, 291 Minn. 105, 111, 189 N.W.2d 701, 706 (1971). An indemnification agreement that "transgresses the law or contravenes public policy" is void. *Northern Pacific Railway Company v. Thornton Brothers Company*, 206 Minn. 193, 196, 288 N.W. 226, 227 (1939).

The indemnification agreement between the Allums and the Nordlings is void as against public policy. The indemnification agreement was an attempt to circumvent MedCenter's subrogation rights and would place the responsibility for the tortfeasor's wrong with the victim. Since all parties stipulated Steven Allum was not fully compensated for his injuries in the settlement, allowing indemnification in these circumstances would permit a tortfeasor and his insurers to avoid liability by entering a settlement agreement which improperly seeks to circumvent another insurer's subrogation rights.

Like subrogation, the object of indemnification:

> is to place the charge where it ought to rest, by compelling the payment of the debt by him who ought in equity to pay it.

*Westendorf*, 330 N.W.2d at 703 (quoting *Northern Trust Co. v. Consolidated Elevator Co.*, 142 Minn. 132, 138, 171 N.W. 265, 268 (1919)).

■ Therefore, we hold that where a tortfeasor and his liability insurer willfully disregard notice of a subrogation claim by the injured person's insurer and enter into a separate settlement with the injured person, a provision in the settlement whereby the injured person agrees to indemnify the tortfeasor and his liability insurer against such subrogation claim is not enforceable where the injured party's total recovery is less than his actual loss. *Travelers*, 310 Minn. at 102–03, 245 N.W.2d at 847–48; *Westendorf*, 330 N.W.2d at 703–04.

## III.

■ MedCenter claims its subrogation provision permits it to directly collect sums from the Allums' settlement proceeds. It claims the language in its subrogation clause expressly gives it the right to settlement proceeds before full recovery for Ste-

ven Allum's injuries. Again, *Westendorf* is controlling:

> Thus, although the reimbursement clause reaches the proceeds, we hold that reimbursement, whether arising from equity or contract, is precluded prior to full recovery.

*Westendorf,* 330 N.W.2d at 704. Since Steven Allum was not fully compensated for his injuries by the settlement, MedCenter may not seek reimbursement from these proceeds under its subrogation clause. Although MedCenter's subrogation clause gives it a "first priority claim" against the settlement, the supreme court has indicated it will not enforce such a provision. *Id.; see Hunt v. Sherman,* 345 N.W.2d 750, 751–53 (Minn.1984). MedCenter did not have the right to seek reimbursement directly from the Allums because Steven Allum was not fully compensated for his injuries.

## DECISION

MedCenter retains a claim against the Nordlings and their insurers because the Nordlings entered into a separate settlement with the Allums after notice of MedCenter's subrogation interest. The provision of the settlement agreement requiring the Allums to indemnify the Nordlings and their insurers for MedCenter's subrogation claims is unenforceable. MedCenter's subrogation provision does not permit it to seek reimbursement from the Allums because Steven Allum was not fully compensated for his injuries.

Affirmed in part and reversed in part.