FARM BUREAU MUTUAL INSURANCE COMPANY, Respondent,

v.

NATIONAL FAMILY INSURANCE COMPANY, Appellant,

Kevin Eckblad, Respondent.

No. C6-91-631.

Court of Appeals of Minnesota.

Sept. 3, 1991.

Review Denied Oct. 31, 1991.

Owen L. Sorenson, Stringer & Rohleder, Ltd., St. Paul, for Farm Bureau Mut. Ins. Co.

Jeanne H. Unger, Rider, Bennett, Egan & Arundel, Minneapolis, for Nat. Family Ins. Co.

Roger T. Sahr, Sahr, Kunert & Tambornino, Minneapolis, for Kevin Eckblad.

Considered and decided by PARKER, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

FOLEY, Judge.

This appeal challenges the trial court's ruling that an insured cannot waive an insurer's subrogation rights. We reverse and remand.

## FACTS

The facts of this case are undisputed. On December 21, 1981, respondent Kevin Eckblad was driving his father's grain truck, which was insured by appellant National Family Insurance Company, and ran out of gas. Eckblad walked to his parent's house and drove his pickup truck, which was insured by respondent Farm Bureau Mutual Insurance Company, to buy gas for the grain truck.

In the meantime, a highway patrol officer discovered the grain truck and parked his car behind it. Eckblad's father then arrived and parked behind the patrol car. Eckblad returned and parked his pickup truck at the end of the line of vehicles. While Eckblad and his father were filling the grain truck's gas tank, a driver travel-

ing in the opposite direction on the other side of the road lost control of his vehicle, hitting Eckblad and his father. Eckblad's father was killed and Eckblad was severely injured.

Various and separate claims arose from the accident. Farm Bureau paid Eckblad $50,758.64 in basic economic loss benefits under his no-fault policy. Because the driver of the car causing the accident was not insured, Eckblad was entitled to benefits from National Family. In May 1982, Eckblad filed a claim for no-fault benefits under the National Family policy covering the grain truck.

In September 1983, Eckblad signed a settlement and release agreement with National Family in exchange for $250,000. The agreement read in part:

RELEASE IN FULL OF ALL CLAIMS AND RIGHTS AGAINST NATIONAL FAMILY INSURANCE COMPANY

* * * It is my specific intent to release every claim of every nature and kind against the National Family Insurance Company pursuant to Policy No. 271 557 or any other National Family Insurance Company policies of insurance which might apply to this accident, including, but not limited to claims for personal injury protection benefits (no-fault), past, present and future, and uninsured motorist benefits which it is claimed are owing as a consequence of the automobile accident of December 21, 1981.

* * * It is expressly understood that this settlement represents the resolution of a doubtful and disputed claim, and that this settlement is not an admission by National Family Insurance Company that any such payments are owed.

* * * It is my specific intent to release National Family Insurance Company, its principals, agents and representatives from any and all claims of every nature and kind arising out of the accident of December 21, 1981.

It is not my intention, in executing this Release, to satisfy all of my claims for damages and for uninsured motorist coverage, personal injury protection (no-

fault) benefits, underinsured motorist coverage or any other benefits which might be accorded by insurance companies other than the National Family Insurance Company. It is my specific intent to settle all my claims against the National Family Insurance Company and to preserve my claims against other insurers, including but not limited to State Farm Mutual Automobile Insurance Company. In further consideration of the payment of this settlement and release agreement, I understand that National Family Insurance Company has agreed to waive any claim of subrogation for payments being made pursuant to this release against Daniel Ball, Kim Marking and the State of Minnesota.

In November 1983, Farm Bureau notified National Family of its claim for reimbursement of no-fault benefits paid to Eckblad. National Family refused payment, maintaining the settlement and release agreement discharged National Family of any further liability.

Farm Bureau commenced this action in 1984, seeking reimbursement from National Family for no-fault benefits it had paid to Eckblad. In September 1990, Farm Bureau moved for summary judgment against National Family. The trial court granted summary judgment, awarding Farm Bureau $50,758.64 plus statutory interest from 1981. Judgment was then entered for $119,387.80 on January 16, 1991 in favor of Farm Bureau.

In February 1991, National Family moved to amend the judgment, maintaining the trial court erred in applying the Minn. Stat. § 549.09 (1990) interest rate rather than the Minn.Stat. § 65B.54, subd. 2 (1990) penalty interest rate. National Family also maintained the interest ran from the date Farm Bureau demanded payment rather than from the date of the accident. The trial court did not respond to that motion. National Family appeals.

ISSUES

1. Can Eckblad relinquish Farm Bureau's subrogation rights and bar the re-

covery of no-fault benefits paid under Minn.Stat. 65B.47, subd. 6 (1980)?

2. Did the trial court err in awarding Minn.Stat. § 65B.54, subd. 2 penalty interest rate rather than the Minn.Stat. § 549.09 interest rate?

## ANALYSIS

The scope of review on a question of law is *de novo*. *Gould v. Bloomington*, 394 N.W.2d 149, 150 (Minn.App.1986). On appeal, this court will not defer to the trial court's interpretation of the law but will determine whether the trial court correctly construed and applied the law to these facts. *Huynh v. Illinois Farmers Ins.*, 421 N.W.2d 390, 391 (Minn.App.1988), *pet. for rev. denied* (Minn. May 18, 1988).

1. Farm Bureau argues that, because National Family is a priority obligor under Minn.Stat. § 65B.47, subd. 6, National Family is obligated to reimburse Farm Bureau for the $50,758.64 Farm Bureau paid to Eckblad. Farm Bureau claims it mistakenly paid economic loss benefits that National Family was obligated to pay. National Family maintains the settlement and release extinguished its obligation to pay.

Minn.Stat. § 65B.47, subd. 6 prevents double recovery by an insured by granting subrogation rights to the lower priority insurer that pays benefits. Minnesota law establishes the priority of the insurers in no-fault situations:

(a) The security for payment of basic economic loss benefits applicable to injury to an insured is the security under which the injured person is an insured.

(b) The security for payment of basic economic loss benefits applicable to injury to the driver or other occupant of an involved motor vehicle who is not an insured is the security covering that vehicle.

(c) The security for payment of basic economic loss benefits applicable to injury to a person not otherwise covered who is not the driver or other occupant of an involved motor vehicle is the security covering any involved motor vehicle. An unoccupied parked vehicle is not an involved motor vehicle unless it was parked so as to cause unreasonable risk of injury.

Minn.Stat. § 65B.47, subd. 4 (1980).

The underlying policy of Minnesota's No–Fault Act is to encourage payments by lower priority insurers in the event a higher priority level insurer denies benefits. *Reed v. Continental Western Ins. Co.*, 374 N.W.2d 436, 439 (Minn.1985). Under Minn. Stat. § 65B.47, subd. 6, if a lower priority insurer pays no-fault benefits, the priority insurer would reimburse the lower priority insurer. By subrogating to the rights of the insured, the lower priority insurer is able to recover the loss from the priority insurer.

Where a reparation obligor pays basic economic loss benefits which another reparation obligor is obligated to pay under the priority provided in this section, the reparation obligor that pays is subrogated to all rights of the person to whom benefits are paid.

Minn.Stat. § 65B.47, subd. 6.

Here, however, National Family paid Eckblad $250,000 in exchange for a release from all claims. Under Minn.Stat. § 65B.47, subd. 6, a subrogation right is entirely dependent on the rights of the subrogee. A subrogee is entitled to no greater rights than the subrogor. He only "steps into the shoes of his subrogor." *Employer's Liab. Assurance Corp. v. Morse*, 261 Minn. 259, 263, 111 N.W.2d 620, 624 (1961). The subrogee lacks standing to bring an action if the subrogor lacks standing. *Regie de l'assurance Auto. v. Jensen*, 399 N.W.2d 85, 88 (Minn.1987).

The equitable concerns of subrogation do not apply in the no-fault context of basic economic loss benefits. *Principal Financial Group v. Allstate Ins. Co.*, 472 N.W.2d 338 (Minn.App.1991). The subrogation right of an insurer that paid basic economic loss benefits may be asserted only to the extent that recovery on the claim absent subrogation would produce a duplicate recovery. Minn.Stat. § 65B.53, subd. 3 (1980). This right can only be asserted against the insured. *Milbrandt v.*

*American Legion Post of Mora*, 372 N.W.2d 702, 705 (Minn.1985).

*Milbrandt* involved subrogation under Minn.Stat. § 65B.53, subds. 2 and 3. Here, the question arises under Minn.Stat. § 65B.47, subd. 6. Section 65B.47, subd. 6 provides that an insurer paying no-fault benefits another insurer should have paid is subrogated to all the rights of the person who received payment.

> The extent of subrogation rights to be granted a reparation obligor that pays or is obligated to pay basic economic loss benefits is a matter for the legislature; we decline to recognize the subrogation right urged by appellant under common law.

*Milbrandt*, 372 N.W.2d at 706. The plain language of Minn.Stat. § 65B.47, subd. 6 bars Farm Bureau's subrogation claim against National Family. We hold Farm Bureau may assert only the rights of Eckblad. Eckblad released his claims against National Family, thus Farm Bureau has no rights to assert.

Farm Bureau erroneously relies on *Travelers Indem. Co. v. Vaccari*, 310 Minn. 97, 245 N.W.2d 844 (1976), which concerns a settlement after notice of the insurer's subrogation claim. In *Vaccari*, the supreme court reasoned that, since the insurer informed the tortfeasor and his insurer of its subrogation interest, the settlement offer did not defeat the subrogation claim. *Id.* at 102–03, 245 N.W.2d at 848. National Family maintains Farm Bureau did not notify National Family of payment on a claim, therefore, Farm Bureau is not entitled to subrogation rights. We agree. Here, Farm Bureau notified National Family after Eckblad released its subrogation rights. Therefore, its rights were not preserved.

2. National Family argues the trial court erred in awarding interest. Because we hold that Farm Bureau did not have subrogation rights, we do not reach this question.

The motion of National Family to strike portions of Farm Bureau's brief is granted.

### DECISION

Eckblad waived Farm Bureau's subrogation rights when he signed a settlement release claim with National Family. Farm Bureau cannot recover from National Family the $50,758.64 it paid to Eckblad. We reverse and remand with directions to vacate the judgment and enter judgment dismissing the complaint.

Reversed and remanded.