**GROUP HEALTH, INC., Appellant,**

v.

**Stanley Milton HEUER, Jr., Respondent.**

**Kathleen Ann McMann, et al., Defendants,**

**Alva Marie Parsons, et al., Timothy Lindholm, Respondents.**

No. C9–92–2299.

Court of Appeals of Minnesota.

May 4, 1993.

Richard L. Jasperson, Richard L. Jasperson, P.A., St. Paul, for appellant Group Health, Inc.

Stanford P. Hill, Paul C. Kunert, Sahr, Kunert & Tambornino, Minneapolis, for respondent Stanley Milton Heuer, Jr.

Michael T. Hughes, Emilio R. Giuliani, La Bore & Giuliani, Ltd., Hopkins, for respondents Alva Marie Parsons, et al.

Sarah L. Brew, Hal A. Shillingstad, Cosgrove, Flynn, Gaskins & O'Connor, Minneapolis, for respondent Timothy Lindholm.

Considered and decided by PARKER, P.J., and AMUNDSON, J., and EDWARD D. MULALLY, Acting J.

## OPINION

MULALLY, Judge.

Group Health, Inc. appeals from a grant of summary judgment which dismissed its subrogation action against respondents Timothy Lindholm, Stanley M. Heuer, Jr., Alva Parsons, and Earl Mattson.[1] We affirm.

---

**1.** Defendant Sara Jane Parsons settled with Group Health in January 1992, and was released from this action. Kathleen Ann McMann, although named as a defendant in the caption, was never served and was not a party to this action.

## FACTS

On July 20, 1984, Sara Jane Parsons was a passenger in a vehicle owned by respondent Earl Mattson and driven by her sister, respondent Alva Marie Parsons. Mattson and respondent Timothy Lindholm were also passengers in the Mattson vehicle at the time. Sara Parsons was injured when the vehicle was struck from behind by a vehicle driven by respondent Stanley M. Heuer, Jr. and owned by Kathleen Ann McMann.

At the time of the accident, Sara Parsons was a member of Group Health, a health maintenance organization. She was rendered a quadriplegic, and Group Health has provided her with over $84,000 in medical treatment and care.

In 1986, Sara Parsons sued all of the parties involved in the accident except Lindholm. Lindholm was not formally served with a summons and complaint until October 1988.

On February 6, 1989, Sara Parsons entered into a settlement agreement with all the tortfeasors, and provided them with a general release. Under the terms of the settlement, she received $2.4 million from the involved insurance carriers. $700,000 was paid from a $1 million liability policy covering Lindholm. All of the other carriers paid their policy limits.

In March 1989, Group Health sent a letter to Lindholm notifying him of its subrogation interest. Lindholm sent copies of the letter to the other parties.

Group Health brought this action in April 1990, seeking to enforce its subrogation rights. All of the respondents moved for summary judgment, claiming they had not received adequate notice of Group Health's subrogation interest prior to their settlement with Sara Parsons. Group Health responded with a motion for partial summary judgment, seeking a determination that respondents had received adequate notice.

The facts pertinent to the notice issue are as follows: During the pendency of the underlying personal injury action, Group Health retained counsel to protect its subrogation interest. By letter dated November 12, 1984, Group Health's counsel placed Sara Parsons' first attorney on notice of Group Health's subrogation interest. The letter also requested the identity of the defendants and their liability insurers. Over the next five years, Group Health's counsel corresponded with Parsons' attorneys regarding the identity of the defendants and the status of the case.

In June 1987, Group Health's counsel was advised that an appeal had been taken to this court to determine the various coverages available. Our decision, which was released in October 1987, identified all of the attorneys, carriers, and parties involved in the underlying liability action. *See Parsons v. Parsons*, 413 N.W.2d 185, 185 (Minn.App.1987).

Group Health's counsel was advised that a pre-trial conference was to be held on December 16, 1988. The conference was attended by the parties, their attorneys, and insurance representatives. No representative from Group Health was present.

Group Health's in-house counsel testified by deposition that prior to the February 1989 settlement, Group Health never corresponded directly with any of the respondents or their insurance carriers. She claimed that prior to this time, neither Group Health's retained counsel nor Group Health was aware of the identity of the respondents. House counsel acknowledged that although Group Health sometimes makes arrangements with a plaintiff's attorney to preserve its interests, no such agreement was made in this case. She admitted she had no evidence that the parties conspired to defeat Group Health's subrogation interest or that they intended to defraud Group Health.

During the pendency of the underlying action, Parsons' attorney unilaterally mentioned Group Health on at least three occasions. In a July 30, 1986, statement of the case, Group Health was listed as one of several medical expense providers. In September 1987, in response to interrogatories from Heuer, Alva Parsons, and Mattson, Parsons' attorney stated "Group Health, Inc. has asserted a subrogation right for all

medical benefits provided to Sara J. Parsons." Finally, during Sara Parsons' September 1988 deposition, her attorney made a third reference to Group Health when he stated:

> [Horace Mann] paid $600,000 for underinsured motorist coverage and $600,000 for liability coverage. They paid $40,000 toward medical expense. They retain a subrogation interest on their underinsured motorist payment. *Group Health paid $75,000. They retain a subrogation interest on that.*

(Emphasis added.)

The district court agreed with Group Health that notice of a subrogation claim need not be given directly to a tortfeasor by the insurer asserting such a right, and that the forms of notice given in this case (i.e., the statement of the case, answers to interrogatories, and statements by Sara Parsons' attorney during her deposition) were not necessarily deficient or inadequate. Nevertheless, the court concluded that while respondents may have had notice of a "potential subrogation interest," they had not received adequate notice that Group Health "intended to assert a subrogation claim."

### ISSUE

Did the district court err in concluding that the tortfeasors did not receive appropriate or adequate notice of Group Health's subrogation interest?

### ANALYSIS

■ On appeal from a grant of summary judgment, this court's review is limited to determining whether there were any genuine issues of material fact or whether the trial court properly interpreted the applicable law. *L & H Transport, Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223, 227 (Minn.1987). While notice is often a question of fact for the jury, the question becomes one of law appropriate for summary judgment when only one inference can be drawn from the undisputed facts. *See id.*

■ A subrogor is generally entitled to no greater rights than those possessed by the subrogee. *Travelers Indem. Co. v. Vaccari*, 310 Minn. 97, 102, 245 N.W.2d 844, 847 (1976). Thus, an insured may defeat an insurer's right of subrogation by settling with and releasing all potential claims against the alleged tortfeasors. *Id.*

■ However, a settlement entered into in willful disregard of a known subrogation claim will not defeat that claim. *Id.* at 103, 245 N.W.2d at 848. Such willful disregard is similar to committing a fraud upon the insurer. *Id.*

The district court in this case reasoned that "absent prior notice of an intent to enforce a subrogation claim, a tortfeasor cannot commit "fraud upon or 'wilfully disregard' the rights of the subrogated insurer by procuring a general release." Thus, the court concluded that a tortfeasor must have notice of the *"assertion of a subrogation claim"* as opposed to notice of a "potential subrogation interest." (Emphasis added.)

However, we agree with Group Health that there is little distinction between a subrogation "claim," "interest," or "right." These terms are used interchangeably by the courts. *See, e.g., Travelers*, 310 Minn. at 102, 245 N.W.2d at 847 (all three terms used throughout opinion).

The issue in this case is what constitutes appropriate or adequate notice. "Notice" means "knowledge of facts which would naturally lead an honest and prudent person to make inquiry." *Black's Law Dictionary* 957 (5th ed. 1979).

■ In order to find willful disregard of an insurer's subrogation interest, some intent to deceive or defraud must be present. Thus, the notice must be actual; a tortfeasor cannot be deemed to have constructive notice, which arises as an inference or presumption of law and not from the parties' intent or "conscience." *See Industrial Loan & Thrift Corp. v. Swanson*, 223 Minn. 346, 351–52, 26 N.W.2d 625, 628–29 (1947).

■ Actual notice may be proved by direct or circumstantial evidence. *Industrial Loan*, 223 Minn. at 353, 26 N.W.2d at 630. Formal, written express notice was

not given in this case. *See, e.g., Travelers,* 310 Minn. at 97, 245 N.W.2d at 844 (insurer notified both tortfeasor and his insurance carrier of its subrogation interest prior to settlement); *Farm Bureau Mut. Ins. Co. v. Orr,* 379 N.W.2d 596, 598 (Minn.App. 1985), *pet. for rev. denied* (Minn. Feb. 19, 1986) (insurer sent letter to owner of car which was driven by tortfeasor informing owner of its intention to assert subrogation claim). Nor is there any other direct evidence that respondents had actual notice: Group Health did not attend pretrial conferences, attempt to intervene, or otherwise attempt to contact respondents. *See, e.g., Allum v. MedCenter Health Care, Inc.,* 371 N.W.2d 557, 558 (Minn.App.1985) (insurer had actually attempted to intervene in underlying personal injury suit in order to protect its subrogation rights). Group Health contends that respondents were placed on notice of its subrogation interests by means of unilateral references to Group Health by Parsons' attorney. However, these references were insufficient to put respondents on notice of any subrogation interests. Parsons' attorney was not competent to make any such representations regarding Group Health's interests: he had not been retained by Group Health nor had he entered into any agreement with Group Health to protect its interests. *Cf. Bausman v. Kelley,* 38 Minn. 197, 205, 36 N.W. 333, 335 (1888) ("It is an essential quality of a notice that it appeared to be given by competent authority."). Perhaps most important, Group Health admitted it has no evidence that respondents intended to defraud it or otherwise defeat its subrogation interests; respondents thus had no actual notice or knowledge of Group Health's subrogation interest.

 Subrogation is an equitable concept arising out of payment of another's obligation, and its purpose is to prevent unjust enrichment. *Westfield Ins. Co. v. Farm Bureau Mut. Ins. Co.,* 515 F.Supp. 38, 40 (D.Minn.1981). To this extent, equity will not permit a tortfeasor to benefit by receiving a windfall. *Westendorf v. Stasson,* 330 N.W.2d 699, 703 (Minn.1983). However, one asserting the right to subrogation cannot thereby profit from his own inaction. *See Melick v. Stanley,* 174 N.J.Super. 271, 283, 416 A.2d 415, 421 (1980).

In this case, although Group Health monitored the underlying action for over five years, it never attempted to contact respondents prior to their settlement with Sara Parsons. Group Health relied heavily upon Sara Parsons' attorneys to provide the information needed to notify respondents. Several other sources of information were available to it, including the district court file and this court's published decision in *Parsons,* 413 N.W.2d at 185. And although Group Health's counsel had prior notice of a December 16, 1988 pretrial conference, neither he nor any Group Health representative attended. As in *Melick,* 174 N.J.Super. at 284, 416 A.2d at 422, the equities in this case lie with respondents. Group Health should not be allowed to sleep on its rights when it had adequate opportunity to protect itself.

### DECISION

The district court's grant of summary judgment to respondents is affirmed.

**Affirmed.**