TIME INSURANCE COMPANY,
Appellant,

v.

OPUS CORPORATION, Respondent.

No. C6–94–210.

Court of Appeals of Minnesota.

July 26, 1994.

our holdings on the previous issues, we need not address this issue.

Steven L. Theesfeld, Jeffery M. Baill, Wasserman and Baill, Minneapolis, for appellant.

Louis J. Speltz, Peter A. Koller, Charles E. Jones, Moss & Barnett, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., and PETERSON and SCHULTZ, JJ.

## OPINION

SCHULTZ, Judge.

This appeal arises from a subrogation action for medical expenses brought by appellant Time Insurance Company against the alleged tortfeasor, respondent Opus Corporation. On cross-motions for summary judgment, the district court determined that Time could not maintain its subrogation claim and ordered judgment for Opus.

## FACTS

In May 1991, Mark Steen was seriously injured when a piece of sheetrock blew down from a building under construction. Opus was the general contractor on the project. Pursuant to his health insurance policy, Time indemnified Steen for $96,930.39 in resulting medical expenses. The insurance policy contained no subrogation clause.

Time learned that Steen had filed a personal injury action against Opus and informed Steen, Steen's attorney, and Opus's attorneys of its subrogation interest. Opus's attorneys reviewed Steen's insurance contract and decided that Time had no legal right of subrogation. In June 1992, Opus and Steen entered into a settlement agreement. Without admitting liability for the accident, Opus agreed to pay Steen $150,000 in exchange for a full release of all claims. The agreement expressly provided that this sum did not represent full recovery for the harm that Steen suffered and did not include any payment for medical expenses. Time was not notified of the settlement negotiations and never consented to be bound by the terms of the agreement.

In February 1993, Time initiated a subrogation action against Opus, alleging that Opus's negligence had caused Steen's injuries. The parties disputed the threshold question of whether Time had a subrogation right at all, and filed cross-motions for summary judgment on that issue. The district court granted Opus's motion and dismissed Time's action, determining that Time had neither a contractual nor an equitable right to subrogation.

## ISSUES

1. Must a health insurer have a valid subrogation clause in its insurance contract with the injured person to sustain a subrogation action against the alleged tortfeasor?

2. Is a health insurer's equitable subrogation claim against an alleged tortfeasor barred because the health insurer is the "primary obligor" of the insured's medical expenses?

3. May the terms of a settlement agreement between an alleged tortfeasor and the injured person bar any contractual or equitable subrogation claim by the health insurer, where the health insurer provided prior notice of its subrogation interests but was excluded from the settlement negotiations?

## ANALYSIS

■ On appeal from summary judgment, the reviewing court must determine whether (1) there are any material issues of fact and (2) the trial court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). In this case, there are no disputed issues of fact. Where the material facts are not in dispute, this court need not defer to the trial court's application of the law. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989).

### 1. Contractual Subrogation

■ The district court held that Time could not assert any subrogation claim at all except by contract. Subrogation is an equitable doctrine that ensures the ultimate payment of a debt by the one who, in justice and good conscience, ought to pay it. *Iowa Nat'l Mut. Ins. v. Liberty Mut. Ins.,* 464 N.W.2d 564, 566 (Minn.App.1990), *pet. for rev. denied* (Minn. Mar. 15, 1991). As a general matter, subrogation "is not dependent upon contract, privity, or strict suretyship." *Id.*

■ Opus contends that, by statute, health care insurers have no right to subrogation unless they include a subrogation clause in the contract. But the statute upon which Opus relies, Minn.Stat. § 62C.14, subd. 2 (1992), applies only to health service plan corporations. *See* Minn.Stat. § 62C.02 (1992) (definition of health service plan corporations). It cannot determine the rights of insurers like Time, who only indemnify health care costs and do not provide health care services.

Opus also points out that Minnesota law requires that "exceptions and reductions of indemnity * * * must be included [in the policy] with the benefit provision to which it applies." Minn.Stat. § 62A.03, subd. 1(6) (1992). The district court reasoned, and Opus now argues, that subrogation necessarily constitutes an exception or reduction of indemnity and therefore had to be in writing to be valid. Exception or reduction implies a limitation on coverage; subrogation is not a coverage limitation, but an equitable principle requiring a wrongdoer to pay for harm caused without regard to the presence of insurance.

But if Opus had been adjudged liable for Steen's injuries, then it would have been

liable for all of Steen's losses, including both pain and suffering and medical expenses. The fact that Steen had insurance to cover his medical expenses would not have made Opus any less liable to pay for them. The supreme court has held that

> a wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability because the insured had had the foresight to obtain, and had paid the expense of procuring, insurance for his protection; since the insured has already been paid for his harm, the liability of the third person should now inure for the benefit of the insurer.

*Travelers Indem. Co. v. Vaccari,* 310 Minn. 97, 101–02, 245 N.W.2d 844, 847 (1976). *Vaccari* is consistent with the notion that the purpose of subrogation is to prevent unjust enrichment by a tortfeasor. *See Group Health v. Heuer,* 499 N.W.2d 526, 530 (Minn. App.1993). Whether Time had first indemnified Steen for his medical expenses and then sought subrogation, or whether Opus had indemnified Steen directly and removed the need for a subrogation action, the result would have been the same: Steen would have been entitled to full recovery for his losses.

We recognize that because Opus has not been adjudged liable for Steen's injuries, it is possible that Opus might not have been liable to pay anything at all. But this is true regardless whether Time had ever asserted a subrogation claim. Opus's incentive to settle with Steen should have been founded in its rational evaluation of the risks of litigation, not in its mistaken belief that it could afford to offer a generous settlement for pain and suffering because Steen's medical expenses were already covered by his health insurance carrier.

Opus also argues that Time was required to include a subrogation clause because "every reported Minnesota case in which a court has enforced a health insurer's right to subrogation or reimbursement of benefits paid involved a policy which contained an explicit subrogation agreement." But this history evidences little other than the wisdom of putting all contractual contingencies in writing.

Minnesota appellate courts have never held that a health insurer has no right to subrogation except by contract. The most that has been said is that an insurer may not assert a subrogation claim before the injured party has been fully compensated, unless expressly provided for in the policy. *Hershey v. Physicians Health Plan,* 498 N.W.2d 519, 520–21 (Minn.App.1993) (citing *Westendorf v. Stasson,* 330 N.W.2d 699 (Minn.1983)). This is an exception to the general rule that whether or not the insurance policy expressly reserves subrogation rights, an insurer is entitled to pursue those rights which the insured may have against a third party whose negligence or wrongful act causes the loss. *Great Northern Oil Co. v. St. Paul Fire & Marine Ins.,* 291 Minn. 97, 99, 189 N.W.2d 404, 406 (1971); *see also Rowe v. St. Paul Ramsey Medical Ctr.,* 472 N.W.2d 640, 644 (Minn.1991) (principal purpose of subrogation is to prevent double recovery and to allocate payment according to fault).

■ Time was not required to include a subrogation clause in its health care cost indemnification contract to preserve its subrogation rights against Opus. Absent another bar to asserting its claim, Time is entitled to seek equitable subrogation against Opus.

## 2. Equitable Subrogation

■ The district court held that Time had no equitable subrogation claim against Opus because Time was the primary obligor of Steen's medical expenses, and by indemnifying him had not undertaken to pay a debt owed by Opus. But "[t]he key element in subrogation cases is whether the party seeking subrogation was *compelled* to pay another's debt." *Iowa Nat'l,* 464 N.W.2d at 566 (emphasis added). Time became subrogated to Steen's rights by honoring a pre-existing duty to pay his medical expenses. *See Vaccari,* 310 Minn. at 100, 245 N.W.2d at 846 (subrogation involves the substitution of an insurer by operation of law to the rights of the insured because of the insurer's pre-existing duty to pay the insured for the loss).

■ The district court's conclusion is exactly the opposite of what the law provides. The fact that Time was "the primary obligor for Steen's medical expenses" did not bar Time from seeking subrogation, but rather

made its subrogation claim possible in the first place.

### 3. Settlement of Claims

 Finally, the district court held that even if Time otherwise could have asserted a claim for contractual or equitable subrogation, the claim was barred by the settlement agreement. The agreement provided that Steen would release all his claims against Opus in return for a payment that did not fully compensate him for his losses. An insured may defeat an insurer's right of subrogation by settling with and releasing all potential claims against alleged tortfeasors. *Heuer*, 499 N.W.2d at 529 (citing *Vaccari*, 310 Minn. at 102, 245 N.W.2d at 847). Subrogation generally is not available if the injured party has not obtained full recovery. *Westendorf*, 330 N.W.2d at 704. But where an alleged tortfeasor willfully disregards notice of the subrogation claim of the injured person's insurer and enters into a separate agreement with the injured person, such a settlement does not defeat the insurer's subrogation rights. *Vaccari*, 310 Minn. at 103, 245 N.W.2d at 848; *Heuer*, 499 N.W.2d at 529; *Allum v. MedCenter Health Care*, 371 N.W.2d 557, 559 (Minn.App.1985).

 Time provided ample prior notice to Steen and to respondent of its subrogation interest. Opus admits that it was aware of Time's subrogation claim but chose to disregard it after reviewing the insurance contract and unilaterally determining that Time had no subrogation rights. Opus now argues that to preserve its rights, Time should have petitioned to intervene in Steen's lawsuit. Nothing in Minnesota law supports such a novel theory. Because Opus willfully excluded Time from the settlement negotiations, the terms of the agreement had no effect on Time's subrogation rights.

### DECISION

We reverse summary judgment and remand to the district court for further proceedings.

Reversed and remanded.